CASE NO. 25-1965

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

JUAN MANUEL LOPEZ-CAMPOS

Petitioner – Appellee

v.

KEVIN RAYCRAFT, Immigration and Customs
Enforcement, Acting Director of Detroit Field
Office, Enforcement and Removal Operations;
KRISTI NOEM, Secretary of U.S. Department of
Homeland Security; U.S. DEPARTMENT OF
HOMELAND SECURITY; PAMELA BONDI,
U.S. Attorney General; DOJ - EXECUTIVE OFFICE OF
IMMIGRATION REVIEW

Respondents – Appellants.

On Appeal from the United States District Court for the Eastern District of
Michigan, Case No. 25-12486 (Hon. Brandy R. McMillion)

**PETITIONER – APPELLEE'S PRINCIPAL BRIEF**

Michael K.T. Tan (CA284869)
My Khanh Ngo (CA317817)
Oscar Sarabia Roman (CA341385)
American Civil Liberties Union
  Foundation
425 California Street, 7th Floor
San Francisco, CA 94104
(415) 343-0770

Miriam Aukerman (P63165)
Marty Berger (PA 335300)
American Civil Liberties Union
  Fund of Michigan
1514 Wealthy SE, Suite 260
Grand Rapids, MI 49506
(616) 301-0930

Judy Rabinovitz (NY2079788)
Natalie Behr (NY6159172)
American Civil Liberties Union
   Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2620

Ramis J. Wadood (P85791)
Philip Mayor (P81691)
Bonsitu Kitaba-Gaviglio (P78822)
American Civil Liberties Union
   Fund of Michigan
2966 Woodward Avenue
Detroit, MI 48201
(313) 578-6800

ii

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, Petitioner-Appellee makes the following disclosure:

1.  Is the party a subsidiary or affiliate of a publicly owned corporation?

    Answer: No.

2.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?

    Answer: No.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................... vi

STATEMENT IN SUPPORT OF ORAL ARGUMENT ........................................xv

INTRODUCTION ...................................................................................................1

JURISDICTIONAL STATEMENT ........................................................................3

STATEMENT OF THE ISSUES.............................................................................4

STATEMENT OF THE CASE.................................................................................4

    I.   The History of Detention During Removal Proceedings and the Current
        Statutory Framework. .................................................................................4

        A.   Pre-1996. ..............................................................................................4

        B.   IIRIRA (1996). ....................................................................................5

        C.   The Lakin Riley Act (2025). .............................................................10

    II.   Judicial and Executive Branch Interpretation and the Government's New
        Mandatory Detention Policy...................................................................10

    III.  Factual Background. ................................................................................13

    IV.  Procedural History. .................................................................................14

STANDARD OF REVIEW ...................................................................................15

SUMMARY OF THE ARGUMENT .....................................................................16

ARGUMENT .........................................................................................................20

    I.   The Detention Statutes Provide Petitioner Access to Bond. .........................20

        A.   Section 1226 Governs Petitioner's Detention..........................................20

            1.   Section 1226 provides the default detention authority for individuals
               arrested in the United States for removal proceedings..........................20

            2.   Section 1226(c) reinforces that § 1226 provides Petitioner with

access to bond. ...............................................................................23

    3.    Executive Branch interpretation and practice confirm that § 1226 applies to Petitioner. ..............................................................26

  B.  Section 1225(b)(2) Applies to Noncitizens, Unlike Petitioner, Who Are "Seeking Admission" at the Border. ...................................28

    1.    The plain language of § 1225(b)(2) applies only to individuals "seeking admission" to the United States................................29

    2.    The government's interpretation ignores the plain language and context of § 1225(b)(2)...............................................................31

    3.    IIRIRA confirms that § 1225(b)(2) does not apply to millions of noncitizens living in the United States. ..................................36

    4.    Pursuing immigration relief is not "seeking admission." .......38

  C.  Constitutional Avoidance Warrants Rejecting the Government's Reading of the INA. ..............................................................41

    1.    The government's reinterpretation of the detention statutes raises serious due process concerns. ..................................................42

    2.    The statutes can be construed to avoid the constitutional problem. .......46

II.   Detaining Petitioner Without a Bond Hearing Violates His Due Process Rights. ..............................................................................47

CONCLUSION ..............................................................................50

Certificate of Compliance ..............................................................51

Certificate of Service ..............................................................52

ADDENDA..............................................................................53

Designation of Relevant District Court Documents .......................53

Key Provisions of Immigration and Nationality Act (INA) ...........55

Chart of District Court Decisions in the Sixth Circuit....................69

# TABLE OF AUTHORITIES

**Cases**                                                                  **Page(s)**

*A.A.R.P. v. Trump*,
605 U.S. 91 (2025)................................................................42

*Abramski v. United States*,
573 U.S. 169 (2014)..............................................................27

*Addington v. Texas*,
441 U.S. 418 (1979)..............................................................44

*Almendarez-Torres v. United States*,
523 U.S. 224 (1998)..............................................................47

*Ammex, Inc. v. United States*,
367 F.3d 530 (6th Cir. 2004) ...............................................16

*Bankamerica Corp. v. United States*,
462 U.S. 122 (1983)..............................................................27

*Barco Mercado v. Francis*,
No. 25-cv-6582, --- F. Supp. 3d ----, 2025 WL 3295903 (S.D.N.Y.
Nov. 26, 2025) .......................................................................3

*Bevan & Assocs., LPA, Inc. v. Yost*,
929 F.3d 366 (6th Cir. 2019) ...............................................41

*Biden v. Texas*,
597 U.S. 785 (2022)..........................................................22, 32

*Castañon-Nava v. U.S. Dep't of Homeland Sec.*,
161 F.4th 1048 (7th Cir. 2025) ......................................*passim*

*Chisom v. Roemer*,
501 U.S. 380 (1991)..............................................................37

*Demore v. Kim*,
538 U.S. 510 (2003)..............................................................46

*Dep't of Homeland Sec. v. Thuraissigiam*,
591 U.S. 103 (2020)..............................................................45

*F.C.C. v. Fox Television Stations, Inc.*,
  556 U.S. 502 (2009).................................................................................41

*Feliciano v. Dep't of Transp.*,
  605 U.S. 38 (2025)...................................................................................35

*Foucha v. Louisiana*,
  504 U.S. 71 (1992)...................................................................................44

*Goldberg v. Kelly*,
  397 U.S. 254 (1970).................................................................................48

*Hamdi v. Rumsfeld*,
  542 U.S. 507 (2004).................................................................................48

*Hernandez v. Sessions*,
  872 F.3d 976 (9th Cir. 2017) ...................................................................49

*Hernandez-Lara v. Lyons*,
  10 F.4th 19 (1st Cir. 2021).......................................................................48

*Island Creek Coal Co. v. Wilkerson*,
  910 F.3d 254 (6th Cir. 2018) ...................................................................15

*Jennings v. Rodriguez*,
  583 U.S. 281 (2018)............................................................................10, 21

*K Mart Corp. v. Cartier, Inc.*,
  486 U.S. 281 (1988).................................................................................28

*Kansas v. Hendricks*,
  521 U.S. 346 (1997).................................................................................44

*Kaplan v. Tod*,
  267 U.S. 228 (1925).................................................................................46

*Keen v. Helson*,
  930 F.3d 799 (6th Cir. 2019) ...................................................................20

*King v. Burwell*,
  576 U.S. 473 (2015).................................................................................25

*Landon v. Plasencia,*
459 U.S. 21 (1982) ........................................................................48

*Leng May Ma v. Barber,*
357 U.S. 185 (1958) ......................................................................44

*Loper Bright Enters. v. Raimondo,*
603 U.S. 369 (2024) ......................................................................27

*Lopez-Campos v. Raycraft,*
797 F. Supp. 3d 771 (E.D. Mich. 2025) ................................14, 15, 30

*Luna Perez v. Sturgis Public Schls.,*
598 U.S. 142 (2023) ......................................................................38

*Lynch v. Cannatella,*
810 F.2d 1363 (5th Cir. 1987) ......................................................45

*Martinez v. Larose,*
968 F.3d 555 (6th Cir. 2020) ........................................................46

*Marx v. Gen. Rev. Corp.,*
568 U.S. 371 (2013) ......................................................................32

*Mathews v. Eldridge,*
424 U.S. 319 (1976) ......................................................................48

*Nielsen v. Preap,*
586 U.S. 392 (2018) ..............................................................8, 23, 25

*Nixon v. Missouri Mun. League,*
541 U.S. 125 (2004) ......................................................................41

*Niz-Chavez v. Garland,*
593 U.S. 155 (2021) ......................................................................22

*Reno v. Flores,*
507 U.S. 292 (1993) ......................................................................42

*Roman v. Ashcroft,*
340 F.3d 314 (6th Cir. 2003) ........................................................15

*Sanchez v. Mayorkas*,
  593 U.S. 409 (2021)................................................................39

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
  559 U.S. 393 (2010)................................................................23

*Shaughnessy v. United States ex rel. Mezei*,
  345 U.S. 206 (1953)................................................................45

*Trump v. J.G.G.*,
  604 U.S. 670 (2025)................................................................42

*United States v. Salerno*,
  481 U.S. 739 (1987)..........................................................43, 47

*United States v. Silvestre-Gregorio*,
  983 F.3d 848 (6th Cir. 2020) ....................................................48

*Util. Air Regul. Grp. v. EPA*,
  573 U.S. 302 (2014)..................................................................2

*Velasco Lopez v. Decker*,
  978 F.3d 842 (2d Cir. 2020) .................................................48, 49

*West Virginia v. EPA*,
  597 U.S. 697 (2022)................................................................42

*Whitman v. Trucking Ass'ns*,
  531 U.S. 457 (2001)................................................................38

*Zadvydas v. Davis*,
  533 U.S. 678 (2001).........................................................*passim*

*Zemel v. Rusk*,
  381 U.S. 1 (1965)..................................................................27

**Statutes**

8 U.S.C. § 1101(a)(13)..............................................................18

8 U.S.C. § 1101(a)(13)(A) .......................................................6, 29

8 U.S.C. § 1101(a)(18)..............................................................40

8 U.S.C. § 1101(b)(4)................................................................40

8 U.S.C. § 1182................................................................25

8 U.S.C. § 1182(a)................................................................6

8 U.S.C. § 1182(a)(3)(A)................................................................31

8 U.S.C. § 1182(a)(6)(A)................................................................25

8 U.S.C. § 1182(a)(6)(A)(i)................................................................22

8 U.S.C. § 1182(a)(6)(A)(i)(I)................................................................14

8 U.S.C. § 1182(a)(6)(C)................................................................9

8 U.S.C. § 1182(a)(6)(C)(ii)................................................................31

8 U.S.C. § 1182(a)(6)(E)(i)................................................................31

8 U.S.C. § 1182(a)(7)................................................................9

8 U.S.C. § 1182(a)(7)(B)(i)(I)................................................................31

8 U.S.C. § 1182(a)(9)(A)................................................................35

8 U.S.C. § 1182(a)(9)(A)(i)................................................................31

8 U.S.C. § 1182(a)(9)(B)................................................................35

8 U.S.C. § 1182(a)(9)(C)................................................................35

8 U.S.C. § 1182(d)(5)................................................................9, 25

8 U.S.C. § 1187................................................................30

8 U.S.C. § 1225................................................................10, 25

8 U.S.C. § 1225(a) (1995)................................................................4

8 U.S.C. § 1225(a)(1)................................................................7, 18, 31, 33

8 U.S.C. § 1225(a)(2)................................................................25

8 U.S.C. § 1225(a)(3)................................................................35, 36

x

8 U.S.C. § 1225(b) ........................................................................*passim*

8 U.S.C. § 1225(b) (1995) ...........................................................5

8 U.S.C. § 1225(b)(1)....................................................................*passim*

8 U.S.C. § 1225(b)(1)(A)(i) .........................................................9

8 U.S.C. § 1225(b)(1)(A)(iii) .......................................................9

8 U.S.C. § 1225(b)(2)....................................................................*passim*

8 U.S.C. § 1225(b)(2)(A)..............................................................*passim*

8 U.S.C. § 1225(b)(2)(B)(ii) ........................................................9

8 U.S.C. § 1226 .............................................................................*passim*

8 U.S.C. § 1226(a) (1995)............................................................5

8 U.S.C. § 1226(a) ........................................................................*passim*

8 U.S.C. § 1226(c) .........................................................................*passim*

8 U.S.C. § 1226(c)(1).....................................................................12

8 U.S.C. § 1226(c)(1)(A) ..............................................................8, 23

8 U.S.C. § 1226(c)(1)(B) ...............................................................8

8 U.S.C. § 1226(c)(1)(C) ...............................................................8

8 U.S.C. § 1226(c)(1)(D) ...............................................................8, 23

8 U.S.C. § 1226(c)(1)(E)................................................................8, 10, 24

8 U.S.C. § 1226(c)(1)(E)(i)...........................................................25

8 U.S.C. § 1226(c)(4).....................................................................8, 23

8 U.S.C. § 1227 .............................................................................25

8 U.S.C. § 1227(a) ........................................................................6

8 U.S.C. § 1227(a)(1).....................................................................25

8 U.S.C. § 1229a ...................................................................................6, 9, 16

8 U.S.C. § 1229a(a)(1) .................................................................................21

8 U.S.C. § 1229a(a)(2) .................................................................................21

8 U.S.C. § 1229a(c)(2) ...................................................................................7

8 U.S.C. § 1229a(c)(2)(A) ...........................................................................21

8 U.S.C. § 1229a(c)(3)(A) .............................................................................7

8 U.S.C. § 1229a(e)(2)(A) ...........................................................................21

8 U.S.C. § 1229b(b)(1)..................................................................................39

8 U.S.C. § 1229c(a)(1) ..................................................................................23

8 U.S.C. § 1231(a) ........................................................................................46

8 U.S.C. § 1231(b)(3)(A) ..............................................................................40

8 U.S.C. § 1252(a) (1995)........................................................................5, 22

8 U.S.C. § 1252(a)(1) (1995) .........................................................................4

8 U.S.C. § 1736............................................................................................30

28 U.S.C. § 1291 ............................................................................................3

28 U.S.C. § 1331 ............................................................................................3

28 U.S.C. § 2241 ........................................................................................3, 14

Homeland Security Act of 2002, Pub. L. 107-296, 116 Stat. 2135 ........................28

Illegal Immigration Reform and Immigrant Responsibility Act, Pub.
L. 104–208, 110 Stat. 3009 (1996) ........................................................5, 6, 8, 37

Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025) ........................................10

REAL ID Act of 2005, Pub. L. 109.13, 119 Stat. 231 ...........................................28

USA PATRIOT Act of 2001, Pub. L. 107-56, 115 Stat. 272 ................................28

**Rules and Regulations**

8 C.F.R. § 208.16(c)(4) ...................................................................................40

8 C.F.R. § 208.17(a) .......................................................................................40

8 C.F.R. § 235.3(c)(1) .....................................................................................26

8 C.F.R. § 236.1(c)(5) ......................................................................................12

8 C.F.R. § 236.21(c)(1) ....................................................................................40

8 C.F.R. § 1003.19(a) .......................................................................................11

8 C.F.R. § 1003.19(h)(2) .............................................................................11, 12

8 C.F.R. § 1236.1(d) ........................................................................................11

62 Fed. Reg. 10,312 (Mar. 6, 1997) ......................................................11, 12, 26

6th Cir. R. 34(a) ..............................................................................................xv

Fed. R. App. P. 34(a)(2) ...................................................................................xv

**Other Authorities**

Br. for the Pet'rs, *Jennings v. Rodriguez*,
     583 U.S. 281 (2018) (No. 15-1204), 2016 WL 5404637 ...................................11

Supp. Br. for the Pet'rs, *Jennings v. Rodriguez*,
     583 U.S. 281 (2018) (No. 15-1204), 2017 WL 430387 ....................................21

Doris Meissner, Comm'r, INS to Henry J. Hyde, Chairman, S. Comm.
     on the Judiciary, Letter Invoking IIRIRA Transitional Period
     Custody Rules (Oct. 3, 1997) .....................................................................37

H.R. Rep. No. 104-469, pt. 1 (1996) ...............................................................*passim*

H.R. Rep. No. 104-828 (1996) ....................................................................7, 23

Jill Wilson, et al., Cong. Rsch. Serv., R47848, Nonimmigrant
     Overstays: Overview and Policy Issues (2023) ...............................................37

*Matter of Akhmedov*,
     29 I. & N. Dec. 166 (BIA 2025) ..................................................................12

*Matter of Castillo-Padilla*,
    25 I. & N. Dec. 257 (BIA 2010) ........................................................................12

*Matter of D-J-*,
    23 I. & N. Dec. 572 (A.G. 2003) .....................................................................12

*Matter of Guerra*,
    24 I. & N. Dec. 37 (BIA 2006) ..........................................................................8

*Matter of Lemus-Losa*,
    25 I & N. Dec. 734 (BIA 2012) ..................................................................34, 35

*Matter of V-X-*,
    26 I. & N. Dec. 147 (BIA 2013) ......................................................................25

*Matter of Y-N-P-*,
    26 I. & N. Dec. 10 (BIA 2012) ........................................................................39

*Matter of Yajure Hurtado*,
    29 I. & N. Dec. 216 (BIA 2025) ................................................................13, 31

Memorandum from Sirce E. Owens, Acting Dir., EOIR, to All of
    EOIR (Jan. 30, 2025) .......................................................................................26

*Seek*, Merriam-Webster's Collegiate Dictionary ed. ..............................................29

*Seek*, Oxford Encyclopedic English Dictionary, 3d ed. (1996) .............................29

*Seek*, Webster's Third New International Dictionary (1993) ..................................29

**STATEMENT IN SUPPORT OF ORAL ARGUMENT**

This case concerns the Executive Branch's new interpretation of the immigration statutes to mandate detention without bond for noncitizens who entered the United States without inspection—a policy that has led to the unlawful detention of countless noncitizens. Hundreds of federal district courts have rejected this policy, leading to multiple appeals by the government.

This Court expedited and assigned four of those appeals, including this one, to the same panel. *See Sanchez Alvarez v. Noem* (No. 25-1969); *Contreras-Cervantes v. Raycraft* (No. 25-1978); *Pizarro-Reyes v. Raycraft* (No. 25-1982). All raise the same statutory issue: whether a noncitizen arrested in the United States after entering the country without inspection is subject to bond-eligible detention under 8 U.S.C. § 1226 or to mandatory detention under 8 U.S.C. § 1225(b)(2). Three of the cases also raise whether mandatory detention of such noncitizens violates due process.

The Parties agree that oral argument will aid the Court in evaluating these issues. *See* Fed. R. App. P. 34(a)(2); 6th Cir. R. 34(a). To conserve resources, and because the issues are the same, Petitioners in all four appeals request to consolidate oral argument, with 30 minutes per side. Petitioners anticipate allocating their time to one or two attorneys and believe the government should be able to do the same.

**INTRODUCTION**

This case involves this administration's radical decision to reinterpret the Immigration and Nationality Act ("INA") to require the detention, without possibility of bond, of Petitioner Juan Manuel Lopez-Campos—and millions of other noncitizens residing in the country—solely because they entered the country without inspection. In 1996, when Congress enacted the current detention statutes, the legislature deliberately chose to maintain the longstanding scheme that provided for release on bond of such noncitizens. The Executive promulgated contemporaneous regulations providing these individuals with bond hearings before an immigration judge to determine if they pose a danger or flight risk. And for the last three decades, *everyone*—Congress, the Executive, and the courts— has understood the detention statutes to work in this way. Indeed, five different presidential administrations, both Democratic and Republican (including the first Trump administration), have faithfully applied the statutes in this manner.

But in mid-2025, the government suddenly decided that noncitizens who entered the country without inspection were instead subject to no-bond detention. In justifying this change, the government relied on a statutory provision that by its terms applies only to noncitizens "seeking admission" to the United States. This new and novel interpretation was not based on any action by Congress; in fact, Congress had amended the detention statutes earlier that year and reaffirmed that

1

noncitizens, like Petitioner, who entered without inspection are bond eligible.

Mr. Lopez-Campos is one of the many noncitizens the government has imprisoned based on this sudden about-face. He has lived in the United States since 1999, raised five U.S. citizen children, and is eligible for immigration relief that would make him a lawful permanent resident. Prior to the government's adoption of the contested policy in July 2025, he was entitled to a bond hearing under the detention statute, 8 U.S.C. § 1226. But under its reinterpretation of the INA, the government now claims he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2), which requires the detention without bond of noncitizens "seeking admission" to the United States. The government does not argue that Mr. Lopez-Campos is a flight risk or danger to the community. Rather, its *sole* justification is that its new and novel reinterpretation of the law categorically requires his detention.

"When an agency claims to discover in a long-extant statute an unheralded power . . . [the courts] typically greet its announcement with a measure of skepticism." *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014). This is especially true here, given the breathtaking consequences of the government's position. If accepted, the government's new interpretation would require the detention of *millions* of people who, like Petitioner, are alleged to have entered the country without inspection—regardless of whether they present a danger or

2

flight risk. That would be the largest expansion of mandatory detention in U.S. history. Yet, for nearly three decades, this purported statutory command escaped the notice of Congress and five different administrations.

Hundreds of judges in district courts across the country—including at least 28 in this Circuit—have rejected the new detention policy as irreconcilable with the INA's text, structure, and history. Decision Chart, Addendum 3 (listing 215 favorable decisions in this Circuit); *Barco Mercado v. Francis*, No. 25-cv-6582, --- F. Supp. 3d ----, 2025 WL 3295903, at *13 (S.D.N.Y. Nov. 26, 2025) (listing 350 decisions rejecting government's position). Just last month, the Seventh Circuit preliminarily concluded the same.[1] This Court should reject the government's attempt to rewrite the INA and affirm the district court's judgment.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. §§ 1331 and 2241. This Court has jurisdiction under 28 U.S.C. § 1291.

---

[1] *See Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1060–63 (7th Cir. 2025) (order granting and denying stay motion in part, and finding that the government was unlikely to establish that noncitizens who entered without inspection are subject to mandatory detention under § 1225(b)(2)).

<h1 style="text-align:center">STATEMENT OF THE ISSUES</h1>

1.      8 U.S.C. § 1226 is the default detention statute that governs detention during removal proceedings of noncitizens arrested in the United States. It generally provides for noncitizens' release on bond. In contrast, 8 U.S.C. § 1225(b)(2) imposes mandatory, no-bond detention on noncitizens "seeking admission" to the United States. Is Petitioner—a noncitizen who was arrested and placed into removal proceedings, and charged with entering the country without inspection years ago—subject to detention under § 1226 or § 1225(b)(2)?

2.      If Petitioner's detention is governed by § 1225(b)(2), does his mandatory detention without a bond hearing violate due process?

<h1 style="text-align:center">STATEMENT OF THE CASE</h1>

**I.      The History of Detention During Removal Proceedings and the Current Statutory Framework.**

**A.      Pre-1996.**

Before 1996, the INA distinguished between "deportation proceedings" and "exclusion proceedings." Deportation proceedings applied both to noncitizens who had entered lawfully but were subject to removal (e.g., as a result of criminal convictions), and to noncitizens who had entered the United States without inspection and were later apprehended in the interior. *See* 8 U.S.C. § 1252(a)(1) (1995). Exclusion proceedings applied to people encountered at the border during the inspection process, but who had not yet "entered" the country. *See id.*

§§ 1225(a)-(b) (1995), 1226(a) (1995).

For people in deportation proceedings, the statute authorized arrest and detention "[p]ending a determination of deportability" and permitted release on bond. 8 U.S.C. § 1252(a) (1995). But for noncitizens apprehended at the border and placed in exclusion proceedings, the statute mandated detention without bond. *Id*. § 1225(b) (1995).

**B.  IIRIRA (1996).**

In 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub. L. 104–208, 110 Stat. 3009 (1996). IIRIRA overhauled the immigration statute, including the rules governing the removal of noncitizens. However, amidst all those changes, Congress maintained the basic rules for detention by: (1) preserving the right to bond for most noncitizens apprehended inside the country under a new provision, 8 U.S.C. § 1226(a); (2) enacting an exception to that statute, 8 U.S.C. § 1226(c), which expanded the group of so-called "criminal aliens" whose release on bond was now prohibited; and, (3) continuing to mandate detention without bond for those apprehended at the border under a new provision, 8 U.S.C. § 1225(b). Section 1225(b) also authorized the mandatory detention of a limited subset of recent entrants who were

placed in new expedited removal proceedings.[2]

What Congress did in IIRIRA was the following:

First, it eliminated separate deportation and exclusion proceedings, combining them into a single "removal" proceeding that provided the new vehicle for adjudicating the cases of all individuals charged with removal, regardless of whether they had entered the United States or were stopped at the border. *See* IIRIRA § 304, 110 Stat. 3009-587 to 3009-593; *see also* 8 U.S.C. § 1229a.

Second, it made the applicable grounds of removal (i.e., deportability or admissibility) depend *not* on physical entry into the United States, but instead on the fact of an "admission"—defined as a "lawful entry" after inspection by an immigration officer. 8 U.S.C. § 1101(a)(13)(A). Under the new scheme, a noncitizen who has been "admitted" to the country is subject to grounds of "deportability," *see id*. § 1227(a), whereas someone who entered the country without inspection and has *not* been admitted or paroled is subject to grounds of "inadmissibility," *see id*. § 1182(a). Thus, noncitizens who enter without inspection and are physically present in the country are no longer "deportable" but instead "inadmissible."[3]

---

[2] The full text of § 1226 and § 1225 is reproduced in Addendum 2.

[3] By making them "inadmissible," Congress relieved the government of the burden of proving such individuals' deportability in removal proceedings, instead placing the burden on the noncitizens to show, by clear and convincing evidence

Third, Congress categorized both an individual "who arrives in the United States" as well as an individual "present in the United States who has not been admitted," as an "applicant for admission." 8 U.S.C. § 1225(a)(1). Thus, after IIRIRA, individuals who enter the country without inspection not only are "inadmissible" (rather than "deportable"); Congress also deemed them "applicants for admission." *Id*.

Fourth, despite making these changes, Congress made the new detention statute governing individuals apprehended inside the country, § 1226, apply to noncitizens "pending a decision on whether [they will] be removed"—a term that encompasses individuals charged with either inadmissibility or deportability. *See* 8 U.S.C. § 1226(a). The accompanying House report also stated that the new § 1226 "restates"—or retains—"the current provisions in [former INA] section 242(a)(1)," the provision that authorized "release on bond" for individuals who entered without inspection. H.R. Rep. No. 104-469, pt. 1, at 229 (1996); *see also* H.R. Rep. No. 104-828, at 210 (1996) (Conf. Rep.). Currently, noncitizens detained under § 1226(a) "may seek review of [their] detention by an officer at the Department of Homeland Security ['DHS'] and then by an immigration judge," and may "secure [their] release" on bond upon convincing the officer or

_____

that they are not inadmissible. *Compare* 8 U.S.C. § 1229a(c)(2), *with id.* § 1229a(c)(3)(A).

immigration judge that they "pose[] no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2018) (citing 8 C.F.R. §§ 1003.19, 1236.1(d)); *Matter of Guerra*, 24 I. & N. Dec. 37 (BIA 2006)).

Fifth, Congress enacted a new provision, § 1226(c), which expanded the mandatory detention of individuals it labeled "criminal aliens" by carving them out from bond eligibility under § 1226(a). *Preap*, 586 U.S. at 398; *see also* IIRIRA §§ 303(a), 321, 110 Stat. 3009-585, 3009-627 to 3009-628. This subsection prohibited the release of noncitizens charged with inadmissibility or deportability on certain criminal and national security grounds who would otherwise have been eligible for release on bond under § 1226(a). 8 U.S.C. § 1226(c)(1)(A)–(E), (c)(4). Importantly, Congress acknowledged the significant increase in detention that would result from § 1226(c)'s expansion of mandatory detention. Accordingly, IIRIRA included an option to delay the provision's implementation for up to two years to allow the then-Immigration and Naturalization Service ("INS") to increase its detention capacity. *See* H.R. Rep. No. 104-469, pt. 1, at 120, 123, 207; IIRIRA § 386(a), 110 Stat. at 3009-653.

Finally, Congress enacted a new provision, § 1225(b), to govern detention at the border of "arriving aliens" and other "applicants for admission." *Id*. The provision contains two subsections, both of which retain the prior practice of mandatorily detaining, without the possibility of bond, individuals who present

themselves at ports of entry and are determined to be inadmissible:

- Section 1225(b)(1) authorizes mandatory detention of individuals placed into new expedited removal proceedings.[4]

- Section 1225(b)(2) applies to "other" applicants for admission who are "seeking admission" to the country, *id*., and are not subject to expedited removal, *see id*. § 1225(b)(2)(B)(ii).

Specifically, § 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal] proceeding under section 1229a of this title." *Id*. Under both provisions of § 1225(b), noncitizens have no access to a bond hearing. Instead, the only option for release is through a discretionary grant of parole. *See* 8 U.S.C. § 1182(d)(5) (authorizing DHS, the jailing authority, to parole the noncitizen "for urgent humanitarian reasons or significant public benefit").

---

[4] The new expedited removal procedures applied to a limited subset of noncitizens determined to be inadmissible based on fraud or lack of proper entry documents. *See* 8 U.S.C. § 1225(b)(1)(A)(i); *see also id*. §§ 1182(a)(6)(C), 1182(a)(7). Congress authorized the application of this provision to individuals who arrive at a port of entry. It also gave the Attorney General the option to apply the provision to recent entrants who had been in the country for less than two years. *See* 8 U.S.C. § 1225(b)(1)(A)(iii).

Unlike § 1226(c), Congress expressed no concern in IIRIRA that the detention mandated by either § 1225(b)(1) or § 1225(b)(2) would increase the number of detainees or the need for detention beds.

**C.      The Laken Riley Act (2025).**

The Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025), enacted last year, amended § 1226(c) to add a new ground for mandatory detention applying to individuals who are charged with inadmissibility for having entered the country without inspection and are additionally accused or convicted of specified criminal conduct. *See id*. (codified at 8 U.S.C. § 1226(c)(1)(E)).

**II.     Judicial and Executive Branch Interpretation and the Government's New Mandatory Detention Policy.**

The Supreme Court and other federal courts have long recognized the aforementioned scope of the detention statutes: § 1225 operates "at the Nation's borders and ports of entry, where the Government must determine whether [a noncitizen] seeking to enter the country is inadmissible," *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018), whereas § 1226 is the default detention authority for noncitizens who are "already in the country." *Id.* at 289; *see also Castañon-Nava*, 161 F.4th at 1061 (observing distinction made in *Jennings* between statutes applicable to noncitizens "seeking admission" versus those "already in the

10

country").[5]

Likewise, since the enactment of IIRIRA in 1996 until mid-2025, the Executive Branch had consistently understood § 1226 to afford a bond hearing to people like Petitioner who are in the interior but allegedly entered the country without inspection. Contemporaneously with IIRIRA's enactment, the Executive Branch issued regulations confirming that noncitizens arrested in the interior and placed into removal proceedings are eligible for release on bond under § 1226(a) (unless § 1226(c) applies). *See* 8 C.F.R. §§ 1003.19(a) & (h)(2), 1236.1(d). A March 1997 interim rule, still in place today, explains that, "[d]espite being applicants for admission," noncitizens "who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection)" are eligible for bond, and that "inadmissible aliens, except for arriving aliens," can seek bond hearings before an immigration judge. Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10,312, 10,323 (Mar. 6,

---

[5] The government in *Jennings* itself described the statute in that way. *See* Br. for the Pet'rs at 2, *Jennings v. Rodriguez*, 583 U.S. 281 (2018) (No. 15-1204), 2016 WL 5404637, at *2 (describing § 1225(b)(2)(A) as applying to those "who arrive at our Nation's doorstep seeking admission"); *id.* at *4 (describing § 1226(a) as governing "[noncitizens] who are already inside the United States"); *id.* at *18–19 ("Section 1225(b) is the most recent iteration of a statutory framework that, for a century, has provided for the exclusion of inadmissible aliens arriving at the Nation's borders.").

1997). At the same time, the rule specified who was *not* eligible for bond hearings—primarily "arriving aliens" and noncitizens subject to § 1226(c)(1). *Id.* at 10,323, 10,361; *see also* 8 C.F.R. §§ 236.1(c)(5), 1003.19(h)(2).

These regulations have remained essentially unchanged for three decades. And consistent with the regulations, the Executive Branch—including the first Trump administration—has, until now, consistently interpreted § 1226 to apply to those who entered without inspection. *See* Resp. Br. 27; *see also*, *e.g.*, *Matter of D-J-*, 23 I. & N. Dec. 572, 262 (A.G. 2003) (Attorney General "exercising [his] authority under section [1226]" to deny release on bond to Haitian noncitizen who had evaded inspection); *Matter of Castillo-Padilla*, 25 I. & N. Dec. 257, 262 (BIA 2010) (observing that noncitizen who was present without admission or parole was released under § 1226); *Matter of Akhmedov*, 29 I. & N. Dec. 166, 166 (BIA 2025) (stating that, as recently as June 30, 2025, in the case of noncitizen who entered unlawfully, "[t]he respondent's custody determination is governed by the provisions of section [1226]").

On July 8, 2025, however, DHS, in coordination with the Department of Justice ("DOJ"), peremptorily determined that a novel interpretation was compelled. Inconsistent with decades of prior understanding, DHS "determined," with little explanation and in a new and unpublished guidance, "that section [1225] of the [INA], rather than section [1226], is the applicable immigration

detention authority for all applicants for admission," including anyone who entered without inspection. Petition, R. 1, PageID #3 (link to DHS Interim Guidance).[6] DHS instructed Immigration and Customs Enforcement ("ICE") to subject any noncitizen present in the United States without being admitted or paroled to mandatory detention under § 1225(b)(2), explaining that these "applicants for admission" would now to be "treated in the same manner that 'arriving aliens' have historically been treated." *Id.*

Months later, the Board of Immigration Appeals ("BIA" or "Board") adopted that interpretation in a published decision, *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). The BIA concluded that noncitizens arrested in the interior and charged with inadmissibility are now subject to mandatory detention under § 1225(b)(2) and not bond-eligible under § 1226. *Id*. at 228; *see also id*. at 219 (stating that § 1226 "does not purport to overrule the mandatory detention requirements" of § 1225(b)(2)). The result is that the government is applying § 1225(b)(2) not only at the border, but also to noncitizens apprehended anywhere within the United States who are charged as inadmissible, and is refusing to afford such noncitizens bond hearings under § 1226.

### III. Factual Background.

Juan Manuel Lopez-Campos came to the United States from Mexico around

---

[6] *Also available at*: https://perma.cc/8SP7-TDDD.

1999 and has lived here continuously since. In those two-and-a-half decades, he married and built a family of five U.S. citizen children and a U.S. citizen grandchild. He has no criminal record. Petition, R. 1, PageID #8.

On June 25, 2025, Mr. Lopez-Campos was pulled over for an alleged traffic infraction (improper passing) and turned over to immigration authorities. He was initially detained by U.S. Customs and Border Protection, and eventually transferred into ICE custody at the Monroe County (Michigan) Jail. Petition, R. 1, PageID #8–9. DHS issued a Notice to Appear charging Mr. Lopez-Campos with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i)(I) (presence without admission), and served an administrative arrest warrant stating that he was being detained under § 1226. Mitchell Decl., R. 9-2, PageID #95–96.

On August 6, 2025, an immigration judge found he lacked jurisdiction to conduct a bond hearing based on the government's new argument that Mr. Lopez-Campos was being detained as an "applicant for admission" under § 1225(b)(2)(A). Petition, R. 1, PageID #10.

## IV. Procedural History.

On August 11, 2025, Mr. Lopez-Campos filed a habeas petition under 28 U.S.C. § 2241. Petition, R. 1, PageID #1–20. On August 29, 2025, the district court granted his petition, holding that his detention was governed by § 1226(a) and that he was entitled to a bond hearing. *Lopez-Campos v. Raycraft*, 797 F.

Supp. 3d 771, 784, 786 (E.D. Mich. 2025).[7] The court reasoned that the government's new interpretation was contrary to the statute's text, structure, and history, and ordered that Petitioner be released or provided a bond hearing. *Id.* at 779–84. The court also held that the government's refusal to provide a bond hearing violated Mr. Lopez-Campos's due process rights. *Id.* at 784–85. The court stated that "given the history and characteristics of this Petitioner, the Government has not and likely cannot show that it has a significant interest in Lopez-Campos' continued detention." *Id*. at 785.

In response, rather than litigate a bond hearing, the government simply released Mr. Lopez-Campos. Status Rep't., R. 15, PageID #180. Mr. Lopez-Campos has since been living in the community, supporting his family, and pursuing cancellation of removal—a form of relief that would afford him lawful permanent residence—so that he can remain with his family in the country he calls home.

## STANDARD OF REVIEW

This Court reviews *de novo* a district court's decision regarding legal issues in a habeas proceeding. *Roman v. Ashcroft*, 340 F.3d 314, 318 (6th Cir. 2003).

---

[7] The district court also rejected the government's administrative exhaustion argument, *Lopez-Campos*, 797 F. Supp. 3d at 778–79, an argument that the government has waived on appeal. Resp. Br. 31 n.4; *see also Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 256 (6th Cir. 2018).

Statutory and constitutional interpretation issues are questions of law that this Court also reviews *de novo*. *Ammex, Inc. v. United States*, 367 F.3d 530, 533 (6th Cir. 2004).

### SUMMARY OF THE ARGUMENT

Section 1226 is the INA's default detention rule for noncitizens living in the United States. It applies broadly to noncitizens placed into § 1229a removal proceedings after apprehension in the interior, including those who entered without inspection and are therefore charged as inadmissible. Congress made this clear by drafting § 1226 as a general authorization to detain a noncitizen "pending a decision on whether the alien is to be removed," 8 U.S.C. § 1226(a)—as the term "removed" encompasses individuals who are inadmissible. In contrast, the pre-IIRIRA statute providing for bond-eligible detention of those apprehended inside the United States was limited to noncitizens "pending a determination of deportability." The government's position that § 1226 only applies to those who have been previously admitted ignores this change. *See infra* Section I.A.1.

The text of § 1226(c) dispels any remaining doubt that Congress intended § 1226 to govern the detention of inadmissible noncitizens like Petitioner. That subsection expressly carves out an exception to § 1226(a)—which provides for release on bond—for noncitizens charged with inadmissibility (or deportability) on certain criminal or terrorism-related grounds, for whom detention is

mandatory. By doing so, Congress clearly understood and intended that allegedly inadmissible noncitizens who are *not* charged on criminal or terrorism-related grounds are eligible for release on bond under § 1226(a). Otherwise, there would have been no need to carve them out from that subsection. *See infra* Section I.A.2.

Congress's recent enactment of the Laken Riley Act demonstrates even more clearly that § 1226 applies to Petitioner. By specifically expanding the scope of § 1226(c) mandatory detention to include a new category of noncitizens who are inadmissible because they entered without inspection and who committed (or are accused of) certain criminal offenses, the legislation was intentionally taking that subset of inadmissible noncitizens out of § 1226(a) and thereby necessarily recognizing that such inadmissible noncitizens are covered by § 1226(a). That understanding refutes the government's belated effort to reinterpret § 1226 to the contrary. *See infra* Section I.A.2.

Indeed, the Executive Branch's own contemporaneously-adopted regulations and three decades of unbroken practice underscore that the INA affords noncitizens who are present in the United States access to bond, even if they entered the country without inspection. *See infra* Section I.A.3.

By contrast, § 1225(b)(2) does *not* apply to people like the Petitioner. Section 1225(b)(2)'s detention mandate applies only to an "applicant for admission" who is "*seeking admission.*" *See id*. The INA deems noncitizens who

enter the country without inspection "applicants for admission" based on their being "present in the United States" without having "been admitted." 8 U.S.C. § 1225(a)(1). But even if Petitioner is considered an "applicant for admission" under the statutory definition, that does not mean that he is "seeking admission." That language—specifically chosen by Congress—reflects an activity, not a status. Consistent with the INA's definition of "admission," the term "seeking admission" means a present tense effort to obtain the "lawful entry into the United States after inspection and authorization." 8 U.S.C. § 1101(a)(13). A noncitizen who entered without inspection and has been living in the United States is clearly not engaging in such an effort. Moreover, the government's argument that all "applicants for admission" are necessarily "seeking admission" to the United States effectively writes "seeking admission" out of the statute, rendering it superfluous. *See infra* Sections I.B.1–2.

The government argues that Petitioner's pursuit of relief from removal constitutes "seeking admission." But that position is foreclosed by Supreme Court precedent, which has recognized that such relief affords "lawful status" and not an "admission." Nor can it be squared with the fact that § 1225(b)(2) does not encompass seeking relief before an immigration judge, which many noncitizens do. And the government's position would have the absurd result of rendering noncitizens ineligible for bond when they seek relief from removal, but eligible

for bond if they choose to voluntarily depart the United States. *See infra* Section I.B.4.

The text of IIRIRA and the staggering ramifications of the government's position further demonstrate that Congress could not have intended to mandate the detention policy. When Congress in IIRIRA expanded mandatory detention through § 1226(c) for noncitizens charged with removal based on criminal conduct, it was acutely sensitive to resource constraints and permitted the agency to delay implementation and increase its detention capacity to hold the estimated 45,000 noncitizens that § 1226(c) would cover each year. But if the government were correct about the scope of § 1225(b)(2), that would mean the same Congress enacted the provision to silently require the no-bond detention of an estimated population of two million people at that time—and closer to six million today—without giving any consideration to existing bedspace. *See infra* Section I.B.3.

Finally, if the statute mandated what the government proposes, it would raise serious constitutional issues that the Court need not and should not decide. Under longstanding precedent, noncitizens residing in the country are entitled to due process when deprived of their liberty. Given this precedent, a statute that requires the detention of every noncitizen in the country who enters without inspection, without any hearing to determine if they pose a danger or flight risk, would at a minimum be constitutionally suspect. *See infra* Section I.C.1.

Whenever a statute can be fairly construed to avoid a serious constitutional problem, the Court must do so. Because § 1226(a) can be fairly construed as authorizing release on bond for noncitizens who entered the country without inspection, and because § 1225(b)(2) can be fairly construed as mandating the detention only of noncitizens who are "seeking admission," this Court should hold that § 1226(a) governs Petitioner's detention and entitles him to a bond hearing. *See infra* Section I.C.2. However, were the Court to decide that it cannot construe the statute in this way, it should find that Petitioner's detention without a bond hearing violates due process. *See infra* Section II.

In short, the district court correctly held that Petitioner's detention is governed by § 1226, not § 1225(b)(2), and that he is entitled to a bond hearing under the statute. In the alternative, Petitioner is entitled to a bond hearing under the Due Process Clause. This Court should affirm the grant of habeas relief.

## ARGUMENT

**I. The Detention Statutes Provide Petitioner Access to Bond.**

**A. Section 1226 Governs Petitioner's Detention.**

**1. Section 1226 provides the default detention authority for individuals arrested in the United States for removal proceedings.**

The text, structure, and history of § 1226 make clear that it is the detention authority for Petitioner. *See Keen v. Helson*, 930 F.3d 799, 803 (6th Cir. 2019)

20

(statutory interpretation is a "holistic endeavor," in which context, structure, and wording can all "help clarify the meaning of an isolated term" (citation omitted)).

Section 1226 provides the "default rule" for noncitizens who are apprehended "inside the United States" and detained for removal proceedings. *Jennings*, 583 U.S. at 288.[8] The plain language of § 1226(a) provides that DHS "may" arrest and detain a noncitizen "pending a decision on whether the alien is to be removed from the United States" while also permitting the noncitizen's release "on bond" or other conditions. 8 U.S.C. § 1226(a). By statute, removal proceedings cover people, like Petitioner, who are charged with being inadmissible after entering the country without inspection. *See* 8 U.S.C. § 1229a(a)(1) (directing the immigration judge to "conduct proceedings for deciding the inadmissibility . . . of an alien"); *see also id*. § 1229a(a)(2), (c)(2)(A), & (e)(2)(A) (referring to charges and determinations of inadmissibility). Given that Congress wrote § 1226 to cover inadmissible noncitizens, it necessarily

---

[8] The government attempts to minimize *Jennings* by asserting it did not rule directly on whether inadmissible noncitizens such as Petitioner fall within § 1226. Resp. Br. 57–59. But the Solicitor General expressly agreed that inadmissible individuals arrested inside the country, including those who entered without inspection, were covered under § 1226, and the Court analyzed the statute with this understanding in mind. *See, e.g.*, Supp. Br. for the Pet'rs at 12, *Jennings v. Rodriguez*, 583 U.S. 281 (2018) (No. 15-1204), 2017 WL 430387, at *12 ("Section 1226(a) governs the detention and release of other aliens arrested inside the United States. This encompasses aliens in a wide variety of circumstances, including those who are present after entering illegally[.]" (internal citation omitted)).

applies to individuals, like Petitioner, who are charged as inadmissible for being "present in the United States without being admitted or paroled," 8 U.S.C. § 1182(a)(6)(A)(i), and are detained "pending a decision on whether [they will] be removed," *id*. at § 1226(a). The government is simply wrong when it claims that § 1226 applies only to people who were admitted to the country. *See* Resp. Br. 51–52.

"The historical context in which [§ 1226] was adopted confirms the plain import of its text." *Biden v. Texas*, 597 U.S. 785, 804 (2022) (citing *Niz-Chavez v. Garland*, 593 U.S. 155, 165 (2021)). When it enacted IIRIRA in 1996, Congress maintained the basic detention framework that had long provided bond to people who had entered without inspection and were arrested for a deportation proceeding. Congress did so by replacing the language providing for detention and bond "[p]ending a determination of deportability" in the predecessor statute, 8 U.S.C. § 1252(a) (1995), with "pending a decision on whether the alien is to be removed" in § 1226. Through this change, Congress thus made clear that the noncitizens who entered without inspection and whom IIRIRA reclassified as inadmissible rather than deportable would remain eligible for bond during removal proceedings. *See* H.R. Rep. No. 104-469, pt. 1, at 229 (explaining that § 1226(a) "restates" the provisions in former § 1252(a)(1) (1995) providing for "release on bond" to noncitizens in the country, including those who entered

without inspection); *accord* H.R. Rep. No. 104-828, at 210. Had Congress intended for § 1226 to apply only to deportable noncitizens, it could have simply retained the prior language referring to "deportability," as it did in other sections of the statute. *See, e.g.*, 8 U.S.C. § 1229c(a)(1).

### 2. Section 1226(c) reinforces that § 1226 provides Petitioner with access to bond.

Section 1226(c) confirms the applicability of § 1226 to inadmissible noncitizens like Petitioner through the statute's structure. Section 1226(c) is an exception to § 1226's general release authority. Section 1226(c) carves out a subset of inadmissible noncitizens from bond eligibility under § 1226(a) where they are charged with removal on certain criminal or terrorism-based grounds, instead subjecting them to mandatory, no-bond detention. *See* 8 U.S.C. §§ 1226(c)(1)(A) & (D), 1226(c)(4); *see also* 8 U.S.C. § 1226(a) (permitting release on bond "[e]xcept as provided in subsection (c)"); *Preap*, 586 U.S. at 397, 409.

Section 1226(c) is thus the exception that proves the rule: § 1226(a) generally affords bond to inadmissible noncitizens—including those, like Petitioner, who entered the country without inspection—*unless* the exception in § 1226(c) applies. Indeed, if § 1226(a) did not generally provide bond to inadmissible noncitizens, Congress would have had no need to exclude a subset of them from bond-eligibility under § 1226(a) in the first place. *See Shady Grove*

23

*Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010) (the fact that Congress has created specific exceptions "proves" that the statute applies in general).

Congress confirmed this point just last year when it enacted the Laken Riley Act ("LRA"). Indeed, that Act demonstrates even more clearly that Congress understands § 1226 to apply to Petitioner. The LRA added a new ground of mandatory detention to § 1226(c) that specifically targets people, like Petitioner, who entered the country without inspection if they—unlike Petitioner—are also charged with, arrested for, convicted of, or admit to committing certain newly-added crimes. *See* 8 U.S.C. § 1226(c)(1)(E). The LRA thus makes it clear that § 1226(c) is the exception to the general rule that people, like Petitioner, charged as inadmissible for entering the country without inspection are eligible for bond under § 1226(a). Otherwise, there would have been no need for Congress to exclude a subset of those entrants from § 1226(a) bond eligibility.

The government has no persuasive response to these arguments. It argues that the LRA does other work besides targeting noncitizens inadmissible for entering without inspection, because it also applies to inadmissible noncitizens who were admitted in error, crewmen, and stowaways. Resp. Br. 52. But even if that were the case, the government cannot account for why Congress would specifically carve out any inadmissible noncitizens if they were not covered by

24

§ 1226(a) in the first place.[9] Nor does the government ever explain why Congress in the LRA specifically focused on noncitizens who are inadmissible based on entering without inspection. *See* 8 U.S.C. § 1226(c)(1)(E)(i) (referring specifically to § 1182(a)(6)(A), under which Petitioner was charged with being "present in the United States without being admitted or paroled").

The government also claims the LRA removes the option of parole for these individuals by now including them under § 1226(c). Resp. Br. 55. But if this had been Congress's intent, it would have either amended § 1225 itself or enacted exceptions to the parole statute, § 1182(d)(5)—not amended § 1226(c), which only applies as "an exception" to people who are otherwise eligible for bond under § 1226(a). *See Preap*, 586 U.S. at 397, 410; *see also King v. Burwell*, 576 U.S. 473, 497 (2015) (explaining that Congress does not change fundamental aspects of a regulatory scheme through "a winding path of connect-the-dots provisions").[10]

---

[9] Moreover, the government is wrong in describing noncitizens who were erroneously admitted as "inadmissible." Resp. Br. 52. Those noncitizens are subject to the grounds of *deportability* at 8 U.S.C. § 1227, not inadmissibility at § 1182, and therefore are not subject to the LRA. *See Matter of V-X-*, 26 I. & N. Dec. 147, 150 (BIA 2013); 8 U.S.C. § 1227(a)(1). Stowaways also have their own statute providing for their swift removal. 8 U.S.C. § 1225(a)(2).

[10] The government's own agency guidance contradicts its theory: the day after the LRA was signed into law, the Executive Office for Immigration Review ("EOIR"), which houses the immigration courts, issued guidance explaining that the LRA creates "an additional category of aliens who are subject to mandatory detention" under § 1226(c) and thus ineligible for a bond hearing under § 1226(a).

The government lastly argues that there is "overlap under any possible reading of the statute," because the LRA imposes no-bond detention on "arriving" noncitizens as well—that is, noncitizens who arrive in the country at a port of entry. Resp. Br. 54. But this is simply wrong. "Arriving" noncitizens are *not* detained under § 1226; they are subject to mandatory detention under § 1225(b)(2). *See* 8 C.F.R. § 235.3(c)(1) (requiring the detention of "arriving" noncitizens under § 1225(b)(2)); *id*. § 1003.19(h)(2)(i)(B) (excluding "arriving" noncitizens from bond hearings under § 1226). There was thus no need for Congress to exclude them from bond hearings when it enacted the LRA, as they were already ineligible for them. The government's claimed "overlap" is thus nonexistent.

### 3. Executive Branch interpretation and practice confirm that § 1226 applies to Petitioner.

Contemporaneous Executive Branch interpretation and longstanding practice also support reading § 1226 to govern Petitioner's detention. In March 1997, just months after IIRIRA's enactment, DOJ promulgated regulations reaffirming that noncitizens "who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond." 62 Fed. Reg. at 10,323. And for three decades across five

---

Memorandum from Sirce E. Owens, Acting Dir., EOIR, to All of EOIR, at 1 (Jan. 30, 2025), https://perma.cc/Y37M-CK8H.

administrations, the government interpreted § 1226 to provide bond hearings to those placed into removal proceedings who entered without inspection. *See supra* Background Section II.[11]

Here, "the longstanding practice of the government can"—and should—"inform [the Court's] determination of what the law is." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024) (cleaned up). The government's contemporaneous interpretation of the statute and adherence to it for decades both provides "powerful evidence that interpreting the Act in [this] way is natural and reasonable," *Abramski v. United States*, 573 U.S. 169, 203 (2014) (Scalia, J., dissenting), and casts serious doubt on the government's departure from the universally-held understanding. *See, e.g.*, *Bankamerica Corp. v. United States*, 462 U.S. 122, 130 (1983) (relying in part on "over 60 years" of government's interpretation and practice to reject its new interpretation of the law).

Furthermore, "Congress' failure to repeal or revise in the face of such administrative interpretation . . . constitute[s] persuasive evidence that that interpretation is the one [Congress] intended." *Zemel v. Rusk*, 381 U.S. 1, 11

---

[11] The government claims that "[u]ntil [2025] . . . the [BIA] had not issued any precedential opinion on the appropriate detention authority" for noncitizens who entered without inspection. Resp. Br. 27. Yet in multiple precedential decisions, including one published in 2025, the Board and the Attorney General said or assumed that § 1226 governed the custody of such noncitizens. *See supra* Background Section II.

(1965). Congress had multiple opportunities over three decades to correct the Executive's supposed misunderstanding of the scope of § 1226, including in post-IIRIRA legislation addressing immigration benefits and procedures, the restructuring of the immigration agencies, and judicial review of immigration matters.[12] But it never questioned the government's application of § 1226 to noncitizens like Petitioner. Indeed, through the LRA, it enacted legislation just last year *confirming* that application. *See supra* Section I.A.2.

**B.      Section 1225(b)(2) Applies to Noncitizens, Unlike Petitioner, Who Are "Seeking Admission" at the Border.**

By contrast, nothing in § 1225(b)(2)—not its text, context, purpose, or history—gives the government the detention mandate it now claims in the interior of the country. Instead, § 1225(b)(2) is confined to individuals apprehended upon inspection at the border. This is consistent with both the meaning of the words that Congress chose—"seeking admission"—the statutory context, and the text and history of IIRIRA. *See K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988) ("In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." (internal citations omitted)).

---

[12] *See, e.g.*, USA PATRIOT Act of 2001, Pub. L. 107-56, 115 Stat. 272; Homeland Security Act of 2002, Pub. L. 107-296, 116 Stat. 2135; REAL ID Act of 2005, Pub. L. 109.13, 119 Stat. 231.

**1. The plain language of § 1225(b)(2) applies only to individuals "seeking admission" to the United States.**

By its plain language, § 1225(b)(2) applies only to those applicants for admission who are "seeking admission." Individuals who are present in the United States after having entered without inspection, like Petitioner who entered years ago, are not "seeking admission."

Start with the operative terms. A straightforward reading makes clear that § 1225(b)(2) does not apply to Petitioner and people like him. Section 1225(b)(2)(A) provides that:

> in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal] proceeding under section 1229a.

*Id.* (emphasis added). "Admission" and "admitted" are defined in the INA to mean "the lawful entry of the [noncitizen] into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). Dictionaries define "seek" as, *inter alia*, "to go in search of; look for;" "to ask for" or "request;" "to try to acquire or gain; aim at," all of which carry a sense of affirmative, voluntary action. *See* Merriam-Webster's Collegiate Dictionary, 12th ed. (definition of "seek"); Oxford Encyclopedic English Dictionary, 3d ed. at 1311 (1996) (to "try or want to find" or "ask for; request"); Webster's Third New International Dictionary at 2055 (1993) (defining "seek" as, *inter alia*, "to go in

29

search of;" or "to try to acquire or gain;" or "to make an attempt").

Putting these two definitions together, the term "seeking admission" means "to go in search of, or to try to acquire or gain, lawful entry into the United States after inspection or authorization by an immigration officer." Critically, this definition connotes present-tense, affirmative action to "go in search of or to try to acquire or gain" a lawful entry into the United States. Petitioner—who is alleged to have entered without inspection over 25 years ago and has been living in the country for decades—is not engaged in any present-tense effort to gain "admission" to the United States. *See Lopez-Campos*, 797 F. Supp. 3d at 782. Therefore, § 1225(b)(2)(A) does not apply to him and does not require his detention without bond.

By contrast, the groups of noncitizens who are "seeking admission" and subject to § 1225(b)(2)(A) underscore the provision's focus on the border and ports of entry. For example, noncitizens who do not have to comply with certain visa requirements, *see* 8 U.S.C. § 1187, may be subject to § 1225(b)(2)(A) if they are seeking to enter and are inadmissible. *See* 8 U.S.C. § 1736 (directing that visa waiver program participant who is an "applicant for admission" must be checked against government databases "at the time the [noncitizen] *seeks admission* to the United States") (emphasis added). Section 1225(b)(2) also covers a range of noncitizens who are seeking lawful entry but are inadmissible on other grounds

not covered under § 1225(b)(1), for instance: someone on visa waiver program who has an Interpol Red Notice, 8 U.S.C. § 1182(a)(3)(A) (security and related grounds); someone suspected of smuggling, *id.* § 1182(a)(6)(E)(i); someone falsely claiming U.S. citizenship, *id.* § 1182(a)(6)(C)(ii); someone with an expired passport, *id.* § 1182(a)(7)(B)(i)(I); and someone who was previously removed, *id.* § 1182(a)(9)(A)(i). All these individuals are, unlike Petitioner, seeking lawful entry into the United States and thus properly detained under § 1225(b)(2).

### 2. The government's interpretation ignores the plain language and context of § 1225(b)(2).

By contrast, the government's attempt to find new and sweeping detention powers in § 1225(b)(2) disregards the statutory text and context. The government's main argument is that because § 1225(a)(1) "deems" Petitioner an "applicant for admission," he therefore must be "seeking admission" for purposes of § 1225(b)(2). *See* Resp. Br. 36–37, 41; *Matter of Yajure-Hurtado*, 29 I. & N. Dec. at 221. But this argument ignores the statutory text and context.

*First*, the government's argument that all "applicants for admission" are necessarily "seeking admission" "violat[es] one of the cardinal rules of statutory interpretation" by rendering parts of § 1225(b)(2)(A) "superfluous." *Castañon-Nava*, 161 F.4th at 1061.[13] If Congress had intended the government's

---

[13] The government's cited cases about surplusage are inapposite because they addressed situations where redundancies were commonly accepted and did not

interpretation, the statute could simply read as follows:

> Subject to subparagraphs (B) and (C), ~~in the case of an alien who is an applicant for admission,~~ if the examining immigration officer determines that an ~~alien seeking~~ **[applicant for]** admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

Congress would not have used such complicated language where much simpler text would have achieved the government's preferred result. "If Congress had wanted the provision to have that effect, it could have said so in words far simpler than those that it wrote." *Texas*, 597 U.S. at 798.

Indeed, the government concedes that its interpretation creates unexplained oddities but asks the Court to ignore them. *See* Resp. Br. 47–48. And at one point in its brief, the government even rewrites the statute by substituting the word "the" for the word "an" before the term "alien seeking admission" in order to equate that term with the preceding reference to "an applicant for admission." *See* Resp. Br. 41 ("Section 1225(b)(2) requires the detention of an 'applicant for admission, if the examining officer determines that *[the]* alien seeking admission is not clearly and beyond a doubt entitled to be admitted.'") (emphasis added). But that is not what the statute says: instead, Congress provided only that "*an* alien seeking admission"—that is, *an* "applicant for admission" who is also "seeking

---

"'render superfluous another part of the same statutory scheme,' as would be the case here." *Castañon-Nava*, 161 F.4th at 1061 (quoting *Marx v. Gen. Rev. Corp.*, 568 U.S. 371, 386 (2013)).

admission"—is subject to detention under the statute. 8 U.S.C. § 1225(b)(2)(A).

**Second**, the government argues that a person "*applying* for something is necessarily *seeking* it," analogizing to the situation of a person who is "applying for admission" and "seeking admission" to a college or club. Resp. Br. 43–44. But that is a red herring. The dispute is not about whether the action of "*applying* for admission" necessarily means "seeking admission." It is whether being an "*applicant* for admission"—the term of art that Congress used in § 1225(b)(2)(A)—necessarily means the person is also "seeking admission"—the additional condition Congress added in § 1225(b)(2)(A).

Here, Congress did not define being an "applicant for admission" in terms of the act of "seeking" admission. Rather, one is an "applicant for admission" by merely being "*present* in the United States" without having "been admitted." 8 U.S.C. § 1225(a)(1) (emphasis added). In other words, the government attempts to read the action of "seeking admission" *into* the definition of "applicant for admission" where Congress defined being such an applicant based on mere presence (or status) alone. Congress "could easily have included noncitizens who are 'seeking admission' within the definition [of applicants for admission] but elected not to do so." *Castañon-Nava*, 161 F.4th at 1061.

A more apt analogy is if Congress, in one section of a statute, provided that a "registered voter" is "anyone who is a U.S. citizen, over 18 years of age and who

has completed their voter registration form." And then in a later section, Congress wrote that "in the case of an individual who is a registered voter, if an election inspector determines that an individual seeking to vote does not meet the eligibility requirements, the individual must submit to an inspection." In this example, someone who is a "registered voter" is not simultaneously "seeking to vote"—they are two distinct predicates. And it would be strange to read the statute to impose a roaming directive on election inspectors to take identification from any "registered voter" if they are not actually attempting to vote. Rather, the obligation to inspect a "registered voter" is triggered only upon their voting. Similarly here, Congress set forth a general category of person—an "applicant for admission"—who falls within the potential reach of the statute, but said § 1225(b)(2)(A) only applies if such a person is engaging in the activity of "seeking admission."

*Third*, the government attempts to avoid the ordinary meaning of "seeking admission" by suggesting that it is a term of art and that "many people who are not actually requesting permission to enter the United States in the ordinary sense are nevertheless deemed to be 'seeking admission' under the immigration laws." Resp. Br. 42–43 (quoting *Matter of Lemus-Losa*, 25 I & N. Dec. 734, 743 (BIA 2012)). But absent evidence that Congress is "defin[ing] a word or phrase in a specialized way," language in a statute should be interpreted by its "ordinary

meaning." *Feliciano v. Dep't of Transp.*, 605 U.S. 38, 45 (2025). The Board in *Lemus-Losa* simply repeats the same error the government makes here, by equating the status of being an "applicant for admission" with the action of "seeking admission," despite Congress's choice to use different terms. Moreover, *Lemus-Losa* addressed a different statute, 8 U.S.C. § 1182(a)(9)(A)–(C), that pertains to grounds of inadmissibility. And even in that statute, Congress exhibited its awareness of the difference between a noncitizen who enters unlawfully and one who makes "a request for *permission* to enter." *Matter of Lemus-Losa*, 25 I. & N. Dec. at 743.

*Finally*, the government claims that 8 U.S.C. § 1225(a)(3) shows that being an "applicant for admission" is a "way" or "manner" of "seeking admission." Resp. Br. 42. But that provision simply provides that "[a]ll aliens (including alien crewmen) who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers." 8 U.S.C. § 1225(a)(3). Read most naturally and in context, the provision merely requires the inspection of an "applicant for admission," or any other noncitizen, when they are requesting permission to enter, reenter, or transit through the country. In other words, the term "applicant for admission" in § 1225(a)(3) must be read in the context of the provision's direction to inspect

noncitizens at a specific point in time.[14]

Another analogy illustrates the point. A statute provides: "All persons who are law graduates, or are otherwise seeking to practice, teach, or administer law, must be licensed by the State Bar." The statute would not reasonably be read as implying that all law graduates are seeking to practice, teach, or administer law. Some law graduates may be planning to work in politics, policy, or business. The "otherwise" clause narrows the category of law graduates who must be licensed to those who also wish to practice, teach, or administer law. Similarly, section 1225(a)(3)'s use of "otherwise" does not imply that all applicants for admission are also seeking admission, re-admission, or transit. Rather, it narrows the category of applicants for admission who are subject to inspection to those seeking admission, readmission, or transit.

### 3. IIRIRA confirms that § 1225(b)(2) does not apply to millions of noncitizens living in the United States.

IIRIRA confirms that § 1225(b)(2) cannot apply to Petitioner. In passing IIRIRA, Congress was acutely aware of and concerned about the strain on detention capacity that § 1226(c)'s new detention mandate would impose by requiring the detention of an estimated 45,000 noncitizens subject to removal on

---

[14] Moreover, the government never explains what "readmission" and "transit" are doing in the statute if "or otherwise" means that what comes before—"applicants for admission"—is a subset of what comes later. Surely the government would not argue that "applicants for admission" are a subset of *those* actions.

criminal grounds each year. *See* H.R. Rep. No. 104-469, pt. 1, at 118, 120, 123. To address the problem, Congress authorized an option to defer implementation of § 1226(c) for two years while the agency built up its detention capacity—an option the government promptly invoked. IIRIRA § 303(b), 110 Stat. 3009-585 to 3009-587; Doris Meissner, Comm'r, INS to Henry J. Hyde, Chairman, S. Comm. on the Judiciary, Letter Invoking IIRIRA Transitional Period Custody Rules (Oct. 3, 1997).[15]

It is implausible that the same Congress that showed such solicitude regarding § 1226(c)'s detention mandate simultaneously enacted the largest expansion of mandatory detention in U.S. history by imposing detention for *millions* of people under § 1225(b)(2)—without a whisper in the statutory text or congressional record.[16] Surely, "if Congress had such an intent, Congress would have made it explicit in the statute, or at least some of the Members would have identified or mentioned it at some point." *Chisom v. Roemer*, 501 U.S. 380, 396 (1991); *see also Whitman v. Trucking Ass'ns*, 531 U.S. 457, 468 (2001)

---

[15] *Available at*: https://perma.cc/HFF9-MY3N.

[16] The estimated population of noncitizens in the United States who entered without inspection was about two million in 1996 and is around six million today. *See* H.R. Rep. No. 104-469, pt. 1, at 111 (estimating that such individuals made up about half of the four million "illegal alien[s]" then living in the United States); Jill Wilson, et al., Cong. Rsch. Serv., R47848, Nonimmigrant Overstays: Overview and Policy Issues, at 1 n.6 (2023).

("Congress . . . does not, one might say, hide elephants in mouseholes.").

Despite this incongruity, the government asserts that Congress's decision to put inadmissible noncitizens who entered without inspection on equal footing with arriving noncitizens in their *removal* proceedings means that it must have also subjected entrants to the same mandatory *detention* that applies to arriving noncitizens. Resp. Br. 49–50. But complex legislation like IIRIRA cannot be understood to pursue a single purpose at the expense of all others. *See Luna Perez v. Sturgis Public Schls.*, 598 U.S. 142, 150 (2023) ("[N]o law pursues its purposes at all costs." (citation omitted) (cleaned up)). Congress nowhere said that it was eliminating the longstanding distinction between border inspection and interior detention or moving entrants into a massively expanded detention mandate under § 1225(b)(2). Indeed, Congress said the opposite and reenacted the same detention rules for entrants in § 1226. *See* H.R. Rep. No. 104-469, pt. 1, at 225. And it had good reason to do so, since applying the rule the government proposes would have overwhelmed the detention system with a directive to put millions of people in mandatory detention—a task that the government was not (and still is not) capable of undertaking.

### 4. Pursuing immigration relief is not "seeking admission."

In an attempt to give "seeking admission" its own meaning, the government argues in the alternative that an applicant for admission who contests their

removal, rather than voluntarily departs, is "seeking admission." Resp. Br. 49–50. But this conclusion is flatly foreclosed by Supreme Court precedent, ignores the statute, and leads to absurd results.

*First*, the Supreme Court in *Sanchez v. Mayorkas*, 593 U.S. 409 (2021), made clear that seeking relief from removal is not the same as "seeking admission." This is because although the most common forms of immigration relief afford a noncitizen "lawful status" in the country, they do not provide an "admission"; the two concepts are "distinct" in immigration law. *Id.* at 415–16. Thus, the Court in *Sanchez* concluded that an individual who had entered the country unlawfully and subsequently received Temporary Protected Status ("TPS") was not constructively "admitted," but instead granted a "lawful status." *Id*. at 415–16; *id*. at 416 (explaining that "a grant of TPS does not come with a ticket of admission"); *see also id*. at 415–16 (explaining that the same is true of asylum).

The government nonetheless argues that Petitioner is "seeking admission" because he has applied for cancellation of removal under 8 U.S.C. § 1229b(b)(1). Resp. Br. 50. But here too, noncitizens like Petitioner are seeking to "cancel [their] removal" as people already present in the United States, not "seeking admission" as they pass into this country from abroad. *See Matter of Y-N-P-*, 26 I. & N. Dec. 10, 13 (BIA 2012) (explaining that cancellation applicant does not "contend that

there is any basis for her admission," and instead "is requesting that [government] exercise [its] discretion to cancel her removal").[17]

***Second***, the government's argument is inconsistent with § 1225(b)(2) itself, which applies only to applicants for admission "if the *examining immigration officer* determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). But many applications for relief from removal are submitted in immigration court and adjudicated by an *immigration judge*, which is expressly not an immigration officer. *Compare id*. § 1101(b)(4), *with id*. § 1101(a)(18). This reflects that § 1225(b)(2)(A) was not meant to apply to people detained in the interior who then seek relief before an immigration judge, like Petitioner is doing.[18]

***Third***, the government's understanding of "seeking admission" creates absurd results. Under its theory, individuals who seek no relief and instead opt for

---

[17] Other immigration relief—like deferred action (e.g., DACA, 8 C.F.R. § 236.21(c)(1)); withholding of removal, 8 U.S.C. § 1231(b)(3)(A); and protection under the Convention Against Torture, 8 C.F.R. §§ 208.16(c)(4), 208.17(a)— prohibit the effectuation of a final removal order once that order has been entered against a noncitizen. Clearly, such limited relief from removal does not confer an "admission" into the United States.

[18] People who enter without inspection may be eligible for a wide range of relief. *See, e.g.*, Pet. Br., *Contreras-Cervantez v. Raycraft* (No. 25-1978) (describing immigration relief sought by eight petitioners subjected to the government's new mandatory detention policy). Depending on the relief sought, determinations are generally either made by an immigration judge or by U.S. Citizenship and Immigration Services.

voluntary departure—meaning they are certain to leave in a matter of weeks—will be able to request bond. Yet, individuals who are eligible for relief—and, as a result, are the most suitable for release on bond because of their significant ties, lack of criminal history, and other equities—are somehow subject to mandatory detention. It also suggests that eligibility for bond can change over time (for instance, if someone withdraws their application) or depend on the kind of relief a person seeks (e.g., before an immigration officer or immigration judge). But a rule that turns on these factors would make no sense, especially with no evidence that Congress sought to condition access to bond on this basis. The "Court [should] not construe a statute in a manner that leads to absurd or futile results." *Nixon v. Missouri Mun. League*, 541 U.S. 125, 138 (2004) (citation omitted).

### C. Constitutional Avoidance Warrants Rejecting the Government's Reading of the INA.

If there were any remaining doubt as to the statute's interpretation, the canon of constitutional avoidance compels rejecting the government's novel detention mandate. While Petitioner believes there is only one plausible interpretation of the text, if the Court believes otherwise, the statutes can and should "be construed to avoid serious constitutional doubts." *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 516 (2009); *Bevan & Assocs., LPA, Inc. v. Yost*, 929 F.3d 366, 377 (6th Cir. 2019) ("[W]here a statute is susceptible to multiple interpretations, at least one of which will render the statute constitutional,

41

we adhere to that interpretation . . . .”). The avoidance canon has particular force when, as here, an agency claims expansive and constitutionally-suspect authority that runs contrary to how the statute has been understood. *Cf. West Virginia v. EPA*, 597 U.S. 697, 725 (2022) (“established practice” and the “want of assertion of power” by the Executive are “significant in determining whether such power was actually conferred”).

### 1. The government’s reinterpretation of the detention statutes raises serious due process concerns.

Detaining noncitizens residing in the United States without bond hearings would at a minimum raise serious due process concerns. The Supreme Court recently reaffirmed that the Fifth Amendment’s Due Process Clause protects all “person[s]”—citizens and noncitizens alike—from deprivations of liberty without due process of law. U.S. Const. amend. V; *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025); *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025); *see also Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *Reno v. Flores*, 507 U.S. 292, 306 (1993). The Due Process Clause protects noncitizen residents—even those who have entered the country illegally—from unjustified deprivations of their liberty, and except in narrow circumstances requires review by a neutral decisionmaker. *See infra* Section II. Yet the government’s reinterpretation of the detention statutes subjects millions of residents to the threat of mandatory detention, without a bond hearing, not because they pose any danger or flight risk, but solely because of an unlawful

entry that in many cases occurred years ago.

"[A]t the heart of the liberty" that the Due Process Clause protects is "[f]reedom from . . . detention." *Zadvydas*, 533 U.S. at 690. Indeed, "[i]n our society liberty is the norm"; detention is the "carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Detention violates substantive due process unless "ordered in a *criminal* proceeding with adequate procedural protections, or, in certain special and narrow nonpunitive circumstances, where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas*, 533 U.S. at 690 (internal quotation marks and citations omitted). Immigration detention is civil, and the Supreme Court has recognized two "special and narrow" circumstances when it can be constitutional: protection against (1) danger to the community and (2) flight risk. *Id.* at 690–91. But here the government jailed Petitioner without any justification based on danger or flight risk. Instead, under the government's reinterpretation, the INA mandates detention for Petitioner and all other noncitizens who allegedly entered the country without inspection—regardless of how long they have lived here, how strong their ties are, or whether they have a criminal record.

Moreover, even when the government has legitimate interests to detain, due process requires "strong procedural protections" to ensure that those interests are

being served. *Id.* at 691. A hearing on whether civil detention serves a non-punitive purpose is the most basic protection required by the Fifth Amendment. Thus, the government generally cannot deprive someone of liberty unless a neutral decisionmaker finds at an individualized hearing that detention furthers the asserted goal. *See id.*; *Foucha v. Louisiana*, 504 U.S. 71, 78–79 (1992); *Kansas v. Hendricks*, 521 U.S. 346, 353, 357 (1997); *Addington v. Texas*, 441 U.S. 418, 428 (1979).

The government nonetheless disputes that its reading of the statutes is constitutionally problematic. Its arguments lack merit.

*First*, the government treats Petitioner and noncitizens who have entered the country without inspection as if they were stopped at the border, claiming that their due process rights are merely "coextensive with the procedures provided by Congress." Resp. Br. 60. But this ignores the long-standing legal "distinction between those [noncitizens] who have come to our shores seeking admission . . . and those who are within the United States after an entry, *irrespective of its legality*." *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) (emphasis added); *see also Zadvydas*, 533 U.S. at 693 (same). Detaining noncitizens who have already entered the country must satisfy constitutional due process requirements.

The fact that Petitioner was not admitted does not change this. *Cf.* Resp. Br. 37. The "entry fiction," under which those who are stopped at the border have

diminished due process rights, has never been extended to individuals who reside in the country without having been admitted. The government's reliance on *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020), is thus inapposite. There the Court emphasized that noncitizens "in this country have due process rights," but treated an arriving noncitizen as functionally still at the border because he was apprehended within 25 yards thereof. *Id.* at 107. But Petitioner was not apprehended at the "threshold of initial entry." *Id.* He was apprehended years *after* entering the country.[19]

The other cases the government cites likewise address noncitizens who are either stopped at the border or paroled into the country, and thus are treated as noncitizens on the "threshold of initial entry" who stand on "different footing" from those who have entered. *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953); *Kaplan v. Tod*, 267 U.S. 228, 230 (1925).[20]

---

[19] The government's reliance on *Thuraissigiam* is even more strained because that case involved the process due before *removing* a noncitizen, not the process due before detaining them. *See* 591 U.S. at 127 & n.21 (explaining Court had "no occasion to consider such arguments" regarding "unauthorized executive detention"); *see also Lynch v. Cannatella*, 810 F.2d 1363, 1373–74 (5th Cir. 1987) (government's interest in regulating entry and removal "play[s] virtually no role" in determining constitutional protections for noncitizens in detention). That is also why the government's reliance upon procedural protections Petitioner receives in *removal* proceedings is irrelevant to the due process issue here: Petitioner claims a fundamental liberty interest in his freedom from *detention*.

[20] *Martinez v. Larose* is even further afield as that petitioner was detained under the statute governing detention after entry of a final removal order, 8 U.S.C.

***Second***, the government's reliance on *Demore v. Kim*, 538 U.S. 510 (2003), is misplaced. The provision at issue in *Demore*—§ 1226(c)—imposed mandatory detention on a limited subset of noncitizens who are removable for certain criminal conduct, and who had been shown to pose a heightened risk of flight and recidivism in numerous studies that were before Congress. *Demore*, 538 U.S. at 513, 517-21. In these "narrow" circumstances, the Supreme Court held that the Constitution permitted an exception from ordinary due process rules to allow their mandatory detention for a "very limited time." *Id.* at 513, 526, 529 n.12, 531. Nowhere did *Demore* sanction indiscriminate, mandatory immigration detention. And Congress has made no findings here that people like Petitioner are a categorical bail risk. To the contrary, such noncitizens have long been eligible for release on bond. *See supra* Section I.A.3.

### 2. The statutes can be construed to avoid the constitutional problem.

Congress presumably did not intend to radically revise the detention statutes and raise the serious constitutional problems that the government's detention mandate presents. Nor is there any question that the statutes can be "fairly" construed to avoid this problem, given that this is precisely how they have been understood by the courts and Congress, and how they were interpreted by the

---

§ 1231(a), and thus a different due process analysis involving likelihood of removal applied. 968 F.3d 555, 565 (6th Cir. 2020).

Executive for the past thirty years. *Almendarez-Torres v. United States*, 523 U.S. 224, 237–38 (1998). Given the text, structure, and history, the Court should find that § 1226, and not § 1225(b)(2), governs Petitioner's detention.

## II. Detaining Petitioner Without a Bond Hearing Violates His Due Process Rights.

If the Court nonetheless concludes that § 1225(b)(2) applies, it should find that its application to noncitizens like Mr. Lopez-Campos who are present in the country, in some cases for years, violates the Due Process Clause.[21] This is true with respect to both substance and procedure.

First, the government's mandatory detention of Petitioner—a person who has lived in the United States for more than 25 years, has five U.S. citizen children, and has no criminal history, Petition, R. 1, PageID #8–10—was neither "carefully limited," *Salerno*, 481 U.S. at 755, nor "narrow," *Zadvydas*, 533 U.S. at 690, and had nothing to do with flight risk or public danger, as due process requires.

Second, Petitioner's mandatory detention lacked the most basic requirement of due process—a hearing to ensure that the purposes of such detention are being served. The balancing test from *Mathews v. Eldridge*, 424 U.S. 319 (1976), makes this clear. *See Landon v. Plasencia*, 459 U.S. 21, 34 (1982)

---

[21] The government suggests the constitutional issue is derivative of the statutory one. Not so. Petitioner brought two independent claims, one statutory and one constitutional. Petition, R.1; PageID #17–18.

(applying *Mathews* in immigration context); *United States v. Silvestre-Gregorio*, 983 F.3d 848, 852 (6th Cir. 2020) (same). That test weighs (1) the nature of "the private interest" being deprived; (2) "the risk of erroneous deprivation"; and (3) the government's countervailing interests. *Mathews*, 424 U.S. at 334–35. All three *Mathews* factors strongly support Petitioner's entitlement to a bond hearing.

As to the private interest, Petitioner invokes "the most elemental of liberty interests—the interest in being free from physical detention." *Hamdi v. Rumsfeld,* 542 U.S. 507, 529 (2004).[22] This interest is elevated for a civil detainee when, as here, they face incarceration "under conditions indistinguishable from those imposed on criminal defendants" serving sentences "for violent felonies and other serious crimes." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020); *see Hernandez-Lara v. Lyons*, 10 F.4th 19, 28 (1st Cir. 2021) (similar).

As for the second *Mathews* factor, mandatory detention poses an unbearably high risk of erroneously depriving Petitioner of his liberty. An individualized bond hearing ensures that an immigration judge can assess whether Petitioner actually poses a flight risk or a danger so he is not needlessly detained pending removal proceedings, which may take months or even years to conclude. Indeed, the government has never argued Petitioner is a flight risk or danger; in

---

[22] The Supreme Court has required individualized hearings in situations involving far lesser interests, including property deprivations. *See, e.g.*, *Goldberg v. Kelly*, 397 U.S. 254, 268 (1970).

fact, after the district court granted the writ, the government chose to forgo a bond hearing and immediately released him, underscoring the immense risk of erroneous deprivation. Status Rep't., R. 15, PageID #180.

As to the last *Mathews* factor, the government does not point to any interest justifying the deprivation of Petitioner's liberty without a bond hearing. The government has no legitimate interest in "separat[ing] families and remov[ing] from the community breadwinners, caregivers, parents, siblings, and employees" like Petitioner. *Velasco Lopez*, 978 F.3d at 855. Furthermore, providing Petitioner with a bond hearing is neither costly nor burdensome; the government provided such hearings for decades. Indeed, restoring this process would *reduce* the fiscal and administrative burdens associated with unnecessary detention, saving money and *benefiting* the public. *See, e.g.*, *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017) (noting that "[t]he costs to the public of immigration detention are 'staggering'").

\*\*\*

In sum, absent an individualized bond hearing to assess dangerousness and flight risk, detention of noncitizens like Petitioner violates due process. Thus, if this Court finds the INA cannot be construed to avoid the constitutional question, it should hold Petitioner's detention without a bond hearing unconstitutional.

## CONCLUSION

The Court should affirm the district court's order granting the writ of habeas corpus.

Respectfully submitted,

Michael K.T. Tan (CA284869)
My Khanh Ngo (CA317817)
Oscar Sarabia Roman (CA341385)
American Civil Liberties Union
  Foundation
425 California Street, 7th Floor
San Francisco, CA 94104
(415) 343-0770
m.tan@aclu.org
mngo@aclu.org
osarabia@aclu.org

Judy Rabinovitz (NY2079788)
Natalie Behr (NY6159172)
American Civil Liberties Union
  Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2620
jrabinovitz@aclu.org
irp_nbehr@aclu.org

s/ Miriam Aukerman (P63165)
Marty Berger (PA 335300)
American Civil Liberties Union
  Fund of Michigan
1514 Wealthy SE, Suite 260
Grand Rapids, MI 49506
(616) 301-0930
maukerman@aclumich.org
mberger@aclumich.org

Ramis J. Wadood (P85791)
Philip Mayor (P81691)
Bonsitu Kitaba-Gaviglio (P78822)
American Civil Liberties Union
  Fund of Michigan
2966 Woodward Avenue
Detroit, MI 48201
(313) 578-6800
rwadood@aclumich.org
pmayor@aclumich.org
bkitaba@aclumich.org

*Attorneys for Petitioner-Appellee*

**Certificate of Compliance**

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the word counting feature of counsel's word processing programs shows that this brief contains 11,540 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Sixth Circuit Rule 32(b)(1).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(A)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

*s/ Miriam J. Aukerman*
Miriam J. Aukerman (P63165)
Attorney for Petitioner-Appellee

**Certificate of Service**

This brief will be served on January 8, 2026, on all counsel of record via the

Court's ECF system.

<span style="margin-left: 50%">*s/ Miriam J. Aukerman*<br>
Miriam J. Aukerman (P63165)<br>
Attorney for Petitioner-Appellee</span>

# ADDENDA

## Addendum 1

### Designation of Relevant District Court Documents

| Description of the Document | Date | District Court Record Entry Number | Page ID Numbers |
|---|---|---|---|
| Petition for Writ of Habeas Corpus | 8/11/2025 | 1 | 1-20 |
| Exhibit A – Order of Immigration Judge Denying Bond | 8/11/2025 | 1-1 | 21-23 |
| Response to Petition for a Writ of Habeas Corpus | 8/20/2025 | 9 | 63-92 |
| Index of Exhibits | 8/20/2025 | 9-1 | 93 |
| Exhibit 1 - Declaration of Tyrone Mitchell Jr. | 8/20/2025 | 9-2 | 94-98 |
| Exhibit 2 - BIA Supplemental Briefing Letter | 8/20/2025 | 9-3 | 99-100 |
| Exhibit 3 - BIA Decision | 8/20/2025 | 9-4 | 101-103 |
| Petitioner's Reply in Support of Petition for Writ of Habeas Corpus | 8/25/2025 | 11 | 106-126 |
| Exhibit 1 – Notice to Appear | 8/25/2025 | 11-1 | 127-130 |
| Petitioner's Notice of Supplemental Authority | 8/27/2025 | 12 | 131-132 |
| Exhibit A - Order, *Ruben Benitez et al. v. Noem et al.*, 5:25-cv-2190-RGK (C.D. Cal. Aug. 26, 2025) | 8/27/2025 | 12-1 | 133-140 |
| Petitioner's Notice of Supplemental Authority | 8/28/2025 | 13 | 141-142 |
| Exhibit A - Order, *Larysa Kostak v. Trump et al.,* 3:25-cv-1093-JE (W.D. La. Aug. 27, 2025) | 8/28/2025 | 13-1 | 143-153 |
| Opinion and Order Granting Writ of Habeas Corpus | 8/29/2025 | 14 | 154-179 |
| Status Report | 9/05/2025 | 15 | 180-182 |
| Notice of Appeal | 10/24/2025 | 19 | 254-255 |

| Revised Transcript of Show Cause Hearing 8-27-2025 | 12/08/2025 | 21 | 257-314 |
| --- | --- | --- | --- |

# Key Provisions of Immigration and Nationality Act (INA)

*<u>Note</u>: The text in red below reflects the amendments made by the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025).*

**8 U.S.C. § 1226 - Apprehension and detention of aliens**

**(a) Arrest, detention, and release**

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—

> **(1)** may continue to detain the arrested alien; and

> **(2)** may release the alien on—

>> **(A)** bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or

>> **(B)** conditional parole; but

> **(3)** may not provide the alien with work authorization (including an "employment authorized" endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

**(b) Revocation of bond or parole**

The Attorney General at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien.

**(c) Detention of criminal aliens**

> **(1) Custody**

> The Attorney General shall take into custody any alien who—

**(A)** is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,

**(B)** is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,

**(C)** is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence to a term of imprisonment of at least 1 year, ~~or~~

**(D)** is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title, or

**(E)**

> **(i)** is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title; and

> **(ii)** is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person.

when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

**(2) Definition**

For purposes of paragraph (1)(E), the terms "burglary", "theft", "larceny", "shoplifting", "assault of a law enforcement officer", and "serious bodily injury" have the meanings given such terms in the jurisdiction in which the acts occurred.

**(3) Detainer**

The Secretary of Homeland Security shall issue a detainer for an alien described in paragraph (1)(E) and, if the alien is not otherwise detained by

the Federal, State, or local officials, shall effectively and expeditiously take custody of the alien.

**(24) Release**

The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

**(d) Identification of criminal aliens**

**(1)** The Attorney General shall devise and implement a system—

**(A)** to make available, daily (on a 24-hour basis), to Federal, State, and local authorities the investigative resources of the Service to determine whether individuals arrested by such authorities for aggravated felonies are aliens;

**(B)** to designate and train officers and employees of the Service to serve as a liaison to Federal, State, and local law enforcement and correctional agencies and courts with respect to the arrest, conviction, and release of any alien charged with an aggravated felony; and

**(C)** which uses computer resources to maintain a current record of aliens who have been convicted of an aggravated felony, and indicates those who have been removed.

**(2)** The record under paragraph (1)(C) shall be made available—

**(A)** to inspectors at ports of entry and to border patrol agents at sector headquarters for purposes of immediate identification of any alien

who was previously ordered removed and is seeking to reenter the United States, and

**(B)** to officials of the Department of State for use in its automated visa lookout system.

**(3)** Upon the request of the governor or chief executive officer of any State, the Service shall provide assistance to State courts in the identification of aliens unlawfully present in the United States pending criminal prosecution.

## (e) Judicial review

The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention ~~or release~~ of any alien or the ~~grant,~~ revocation~~,~~ or denial of bond or parole.

## (f) Enforcement by attorney general of a State

The attorney general of a State, or other authorized State officer, alleging an action or decision by the Attorney General or Secretary of Homeland Security under this section to release any alien or grant bond or parole to any alien that harms such State or its residents shall have standing to bring an action against the Attorney General or Secretary of Homeland Security on behalf of such State or the residents of such State in an appropriate district court of the United States to obtain appropriate injunctive relief. The court shall advance on the docket and expedite the disposition of a civil action filed under this subsection to the greatest extent practicable. For purposes of this subsection, a State or its residents shall be considered to have been harmed if the State or its residents experience harm, including financial harm in excess of $100.

**8 U.S.C. § 1225 - Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing**

**(a) Inspection**

**(1)** Aliens treated as applicants for admission

An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

**(2)** Stowaways

An arriving alien who is a stowaway is not eligible to apply for admission or to be admitted and shall be ordered removed upon inspection by an immigration officer. Upon such inspection if the alien indicates an intention to apply for asylum under section 1158 of this title or a fear of persecution, the officer shall refer the alien for an interview under subsection (b)(1)(B). A stowaway may apply for asylum only if the stowaway is found to have a credible fear of persecution under subsection (b)(1)(B). In no case may a stowaway be considered an applicant for admission or eligible for a hearing under section 1229a of this title.

**(3)** Inspection

All aliens (including alien crewmen) who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers.

**(4)** Withdrawal of application for admission

An alien applying for admission may, in the discretion of the Attorney General and at any time, be permitted to withdraw the application for admission and depart immediately from the United States.

**(5)** Statements

An applicant for admission may be required to state under oath any information sought by an immigration officer regarding the purposes and intentions of the applicant in seeking admission to the United States, including the applicant's intended length of stay and whether the applicant intends to remain permanently or become a United States citizen, and whether the applicant is inadmissible.

## (b) Inspection of applicants for admission

**(1)** Inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled

**(A)** Screening

**(i)** In general

If an immigration officer determines that an alien (other than an alien described in subparagraph (F)) who is arriving in the United States or is described in clause (iii) is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution.

**(ii)** Claims for asylum

If an immigration officer determines that an alien (other than an alien described in subparagraph (F)) who is arriving in the United States or is described in clause (iii) is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title and the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution, the officer shall refer the alien for an interview by an asylum officer under subparagraph (B).

**(iii)** Application to certain other aliens

**(I)** In general

The Attorney General may apply clauses (i) and (ii) of this subparagraph to any or all aliens described in subclause (II) as designated by the Attorney General. Such designation shall be in the sole and unreviewable discretion of the Attorney General and may be modified at any time.

**(II)** Aliens described

An alien described in this clause is an alien who is not described in subparagraph (F), who has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph.

**(B)** Asylum interviews

**(i)** Conduct by asylum officers

An asylum officer shall conduct interviews of aliens referred under subparagraph (A)(ii), either at a port of entry or at such other place designated by the Attorney General.

**(ii)** Referral of certain aliens

If the officer determines at the time of the interview that an alien has a credible fear of persecution (within the meaning of clause (v)), the alien shall be detained for further consideration of the application for asylum.

**(iii)** Removal without further review if no credible fear of persecution

**(I)** In general

Subject to subclause (III), if the officer determines that an alien does not have a credible fear of persecution, the officer shall order the alien removed from the United States without further hearing or review.

**(II)** Record of determination

The officer shall prepare a written record of a determination under subclause (I). Such record shall include a summary of the material facts as stated by the applicant, such additional facts (if any) relied upon by the officer, and the officer's analysis of why, in the light of such facts, the alien has not established a credible fear of persecution. A copy of the officer's interview notes shall be attached to the written summary.

**(III)** Review of determination

The Attorney General shall provide by regulation and upon the alien's request for prompt review by an immigration judge of a determination under subclause (I) that the alien does not have a credible fear of persecution. Such review shall include an opportunity for the alien to be heard and questioned by the immigration judge, either in person or by telephonic or video connection. Review shall be concluded as expeditiously as possible, to the maximum extent practicable within 24 hours, but in no case later than 7 days after the date of the determination under subclause (I).

**(IV)** Mandatory detention

Any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed.

**(iv)** Information about interviews

The Attorney General shall provide information concerning the asylum interview described in this subparagraph to aliens who may be eligible. An alien who is eligible for such interview may consult with a person or persons of the alien's choosing prior to the interview or any review thereof, according to regulations prescribed by the Attorney General. Such consultation shall be at no expense to the Government and shall not unreasonably delay the process.

**(v)** "Credible fear of persecution" defined

For purposes of this subparagraph, the term "credible fear of persecution" means that there is a significant possibility, taking into account the credibility of the statements made by the alien in support of the alien's claim and such other facts as are known to the officer, that the alien could establish eligibility for asylum under section 1158 of this title.

**(C)** Limitation on administrative review

Except as provided in subparagraph (B)(iii)(III), a removal order entered in accordance with subparagraph (A)(i) or (B)(iii)(I) is not subject to administrative appeal, except that the Attorney General shall provide by regulation for prompt review of such an order under subparagraph (A)(i) against an alien who claims under oath, or as permitted under penalty of perjury under section 1746 of title 28, after having been warned of the penalties for falsely making such claim under such conditions, to have been lawfully admitted for permanent residence, to have been admitted as a refugee under section

1157 of this title, or to have been granted asylum under section 1158 of this title.

**(D)** Limit on collateral attacks

In any action brought against an alien under section 1325(a) of this title or section 1326 of this title, the court shall not have jurisdiction to hear any claim attacking the validity of an order of removal entered under subparagraph (A)(i) or (B)(iii).

**(E)** "Asylum officer" defined

As used in this paragraph, the term "asylum officer" means an immigration officer who—

**(i)** has had professional training in country conditions, asylum law, and interview techniques comparable to that provided to full-time adjudicators of applications under section 1158 of this title, and

**(ii)** is supervised by an officer who meets the condition described in clause (i) and has had substantial experience adjudicating asylum applications.

**(F)** Exception

Subparagraph (A) shall not apply to an alien who is a native or citizen of a country in the Western Hemisphere with whose government the United States does not have full diplomatic relations and who arrives by aircraft at a port of entry.

**(G)** Commonwealth of the Northern Mariana Islands

Nothing in this subsection shall be construed to authorize or require any person described in section 1158(e) of this title to be permitted to apply for asylum under section 1158 of this title at any time before January 1, 2014.

**(2) Inspection of other aliens**

**(A)** In general

Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

**(B)** Exception

Subparagraph (A) shall not apply to an alien—

**(i)** who is a crewman,

**(ii)** to whom paragraph (1) applies, or

**(iii)** who is a stowaway.

**(C)** Treatment of aliens arriving from contiguous territory

In the case of an alien described in subparagraph (A) who is arriving on land (whether or not at a designated port of arrival) from a foreign territory contiguous to the United States, the Attorney General may return the alien to that territory pending a proceeding under section 1229a of this title.

**(3)** Enforcement by attorney general of a state

The attorney general of a State, or other authorized State officer, alleging a violation of the detention and removal requirements under paragraph (1) or (2) that harms such State or its residents shall have standing to bring an action against the Secretary of Homeland Security on behalf of such State or the residents of such State in an appropriate district court of the United States to obtain appropriate injunctive relief. The court shall advance on the docket and expedite the disposition of a civil action filed under this paragraph to the greatest extent practicable. For purposes of this paragraph,

a State or its residents shall be considered to have been harmed if the State or its residents experience harm, including financial harm in excess of $100.

**(4)** Challenge of decision

The decision of the examining immigration officer, if favorable to the admission of any alien, shall be subject to challenge by any other immigration officer and such challenge shall operate to take the alien whose privilege to be admitted is so challenged, before an immigration judge for a proceeding under section 1229a of this title.

**(c) Removal of aliens inadmissible on security and related grounds**

**(1)** Removal without further hearing

If an immigration officer or an immigration judge suspects that an arriving alien may be inadmissible under subparagraph (A) (other than clause (ii)), (B), or (C) of section 1182(a)(3) of this title, the officer or judge shall—

 **(A)** order the alien removed, subject to review under paragraph (2);

 **(B)** report the order of removal to the Attorney General; and

 **(C)** not conduct any further inquiry or hearing until ordered by the Attorney General.

**(2)** Review of order

 **(A)** The Attorney General shall review orders issued under paragraph (1).

 **(B)** If the Attorney General—

  **(i)** is satisfied on the basis of confidential information that the alien is inadmissible under subparagraph (A) (other than clause (ii)), (B), or (C) of section 1182(a)(3) of this title, and

**(ii)** after consulting with appropriate security agencies of the United States Government, concludes that disclosure of the information would be prejudicial to the public interest, safety, or security,

the Attorney General may order the alien removed without further inquiry or hearing by an immigration judge.

**(C)** If the Attorney General does not order the removal of the alien under subparagraph (B), the Attorney General shall specify the further inquiry or hearing that shall be conducted in the case.

**(3)** Submission of statement and information

The alien or the alien's representative may submit a written statement and additional information for consideration by the Attorney General.

**(d)** Authority relating to inspections

**(1)** Authority to search conveyances

Immigration officers are authorized to board and search any vessel, aircraft, railway car, or other conveyance or vehicle in which they believe aliens are being brought into the United States.

**(2)** Authority to order detention and delivery of arriving aliens

Immigration officers are authorized to order an owner, agent, master, commanding officer, person in charge, purser, or consignee of a vessel or aircraft bringing an alien (except an alien crewmember) to the United States—

**(A)** to detain the alien on the vessel or at the airport of arrival, and

**(B)** to deliver the alien to an immigration officer for inspection or to a medical officer for examination.

**(3)** Administration of oath and consideration of evidence

The Attorney General and any immigration officer shall have power to administer oaths and to take and consider evidence of or from any person touching the privilege of any alien or person he believes or suspects to be an alien to enter, reenter, transit through, or reside in the United States or concerning any matter which is material and relevant to the enforcement of this chapter and the administration of the Service.

**(4)** Subpoena authority

> **(A)** The Attorney General and any immigration officer shall have power to require by subpoena the attendance and testimony of witnesses before immigration officers and the production of books, papers, and documents relating to the privilege of any person to enter, reenter, reside in, or pass through the United States or concerning any matter which is material and relevant to the enforcement of this chapter and the administration of the Service, and to that end may invoke the aid of any court of the United States.

> **(B)** Any United States district court within the jurisdiction of which investigations or inquiries are being conducted by an immigration officer may, in the event of neglect or refusal to respond to a subpoena issued under this paragraph or refusal to testify before an immigration officer, issue an order requiring such persons to appear before an immigration officer, produce books, papers, and documents if demanded, and testify, and any failure to obey such order of the court may be punished by the court as a contempt thereof.

*Note: This Addendum reflects all the decisions from district courts in this Circuit that Petitioner is aware of that address the issues in this appeal as of January 3, 2026. It excludes cases where courts have dismissed noncitizens' habeas petitions based on principles of prudential exhaustion, as the government has not advanced any exhaustion argument on appeal.*

**Chart of District Court Decisions in the Sixth Circuit
Holding That 8 U.S.C § 1226 Rather Than § 1225(B)(2) Applies to Non-
Citizens Who Entered Without Inspection**

| Judge | Relevant Decisions as of January 3, 2026 (<u>TOTAL: 215</u>) |
|---|---|
| | E.D. Ky. |
| Bunning, David L. | *Ichich Xo v. Daley*, No. 25-cv-176, 2025 WL 3657230 (E.D. Ky. Dec. 17, 2025); *Issahaku v. Olson*, No. 25-cv-180, 2025 WL 3539290 (E.D. Ky. Dec. 10, 2025); *Pacheco-Acosta v. Olson*, No. 25-cv-186, 2025 WL 3542128 (E.D. Ky. Dec. 10, 2025); *Moyao Roman v. Olson*, No. 25-cv-169, 2025 WL 3268403 (E.D. Ky. Nov. 24, 2025) |
| | W.D. Ky. |
| Boom, Claria Horn | *Martinez-Elvir v. Olson*, No. 25-cv-589, 2025 WL 3006772 (W.D. Ky. Oct. 27, 2025) |
| Hale, David J. | *Singh v. Lewis*, No. 25-cv-133, 2025 WL 3298080 (W.D. Ky. Nov. 26, 2025); *Salinas v. Woosley*, No. 25-cv-121, 2025 WL 3243837 (W.D. Ky. Nov. 20, 2025); *Lopez v. Olson*, No. 25-cv-654, 2025 WL 3217036 (W.D. Ky. Nov. 18, 2025); *Alonso v. Tindall*, No. 25-cv-652, 2025 WL 3083920 (W.D. Ky. Nov. 4, 2025) |

| | |
|---|---|
| Jennings, Rebecca Grady | *Ramirez v. Lewis*, No. 25-cv-143, 2025 WL 3553676 (W.D. Ky. Dec. 11, 2025); *Edahi v. Lewis*, No. 25-cv-129, 2025 WL 3466682 (W.D. Ky. Nov. 27, 2025); *Orellana v. Noem*, No. 25-cv-112, 2025 WL 3006763 (W.D. Ky. Oct. 27, 2025); *Barrera v. Tindall*, No. 25-cv-541, 2025 WL 2690565 (W.D. Ky. Sept. 19, 2025) |
| Stivers, Greg N. | *Resendiz v. Noem*, No. 25-cv-00159, 2025 WL 3527284 (W.D. Ky. Dec. 9, 2025); *Aranda v. Olson*, No. 25-cv-00156, 2025 WL 3499061 (W.D. Ky. Dec. 5, 2025); *Mateo v. Noem*, No. 25-cv-00151, 2025 WL 3499062 (W.D. Ky. Dec. 5, 2025); *Del Villar v. Noem*, No. 25-cv-00137, 2025 WL 3231630 (W.D. Ky. Nov. 19, 2025) |
| **E.D. Mich.** | |
| Behm, F. Kay | *Zambrano Paz v. Raycraft*, No. 25-cv-13563, 2025 WL 3473361 (E.D. Mich. Dec. 3, 2025); *Ali Kadagan v. Raycraft*, No. 25-cv-13602, 2025 WL 3268895 (E.D. Mich. Nov. 24, 2025); *Romero Garcia v. Raycraft*, No. 25-cv-13407, 2025 WL 3252286 (E.D. Mich. Nov. 21, 2025); *Morales-Martinez v. Raycraft*, No. 25-cv-13303, 2025 WL 3124695 (E.D. Mich. Nov. 7, 2025) |
| Berg, Terrence G. | *Arredondo-Silva v. Raycraft*, No. 25-cv-13674, 2025 WL 3625781 (E.D. Mich. Dec. 15, 2025); *Garcia Rodriguez v. Raycraft*, No. 25-cv-13606, 2025 WL 3565685 (E.D. Mich. Dec. 12, 2025) |
| DeClercq, Susan K. | *Jimenez Garcia v. Raybon*, No. 25-cv-13086, 2025 WL 2976950 (E.D. Mich. Oct. 21, 2025) |
| Grey, Jonathan J.C. | *Lopez Lopez v. Raycraft*, No. 25-cv-13802, 2025 WL 3720434 (E.D. Mich. Dec. 22, 2025) |
| Kumar, Shalina D. | *Alvarez-Lopez v. U.S. Dep't of Homeland Sec.*, No. 25-cv-13098, 2025 WL 3525956 (E.D. Mich. Dec. 9, 2025); *Gimenez Gonzalez* |

| | |
|---|---|
| | *v. Raycraft*, No. 25-cv-13094, 2025 WL 3006185 (E.D. Mich. Oct. 27, 2025) |
| Leitman, Matthew F. | *Hurtado-Medina v. Raycraft*, No. 25-cv-13248, 2025 WL 3268896 (E.D. Mich. Nov. 24, 2025) |
| Levy, Judith E. | *Amaya v. Raycraft*, No. 25-cv-13539, 2025 WL 3530273 (E.D. Mich. Dec. 9, 2025); *Mauricio Diego v. Raycraft*, No. 25-13288, 2025 WL 3159106 (E.D. Mich. Nov. 12, 2025) |
| Ludington, Thomas L. | *Cervantes Morales v. Raycraft*, No. 25-cv-13434, 2025 WL 3543611 (E.D. Mich. Dec. 10, 2025); *Morales Rodriguez v. Raycraft*, No. 25-cv-13560, 2025 WL 3543614 (E.D. Mich. Dec. 10, 2025); *Ramirez v. Raycraft*, No. 25-cv-13444, 2025 WL 3543612 (E.D. Mich. Dec. 10, 2025); *Contreras-Lomeli v. Raycraft*, No. 25-cv-12826, 2025 WL 2976739 (E.D. Mich. Oct. 21, 2025) |
| McMillion, Brandy R. | *Velasco-Sanchez v. Raycraft*, No. 25-cv-13730, 2025 WL 3553672 (E.D. Mich. Dec. 11, 2025); *Casio-Mejia v. Raycraft*, No. 25-cv-13032, 2025 WL 2976737 (E.D. Mich. Oct. 21, 2025); *Santos Franco v. Raycraft*, No. 25-cv-13188, 2025 WL 2977118 (E.D. Mich. Oct. 21, 2025); *Pacheco Mayen v. Raycraft*, No. 25-cv-13056, 2025 WL 2978529 (E.D. Mich. Oct. 17, 2025); *Diaz Sandoval v. Raycraft*, No. 25-cv-12987, 2025 WL 2977517 (E.D. Mich. Oct. 17, 2025); ***Contreras-Cervantes v. Raycraft*, No. 25-cv-13073, 2025 WL 2952796 (E.D. Mich. Oct. 17, 2025)**; ***Lopez-Campos v. Raycraft*, No. 25-cv-12486, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025)** |
| Michelson, Laurie J. | *Robledo Gonzalez v. Raycraft*, No. 25-cv-13502, 2025 WL 3218242 (E.D. Mich. Nov. 17, 2025) |
| Parker, Linda V. | *Brito Hidalgo v. Raycraft*, No. 25-cv-13588, 2025 WL 3473360 (E.D. Mich. Dec. 3, 2025); *Lopez Herrera v. Raycraft*, No. 25-cv-13627, 2025 WL 3473358 (E.D. Mich. Dec. 3, 2025); *Torres-* |

| | |
|---|---|
| | *Vasquez v. Raycraft*, No. 25-cv-13571, 2025 WL 3473359 (E.D. Mich. Dec. 3, 2025) |
| White, Robert J. | ***Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025)** |
| **W.D. Mich.** | |
| Beckering, Jane M. | *Sepulveda v. Raycraft*, No. 25-cv-1731, 2025 WL 3777030 (W.D. Mich. Dec. 31, 2025); *Huerta Morales v. Raycraft*, No. 25-cv-1842, 2025 WL 3757064 (W.D. Mich. Dec. 29, 2025); *Gamboa Garcia v. Raycraft*, No. 25-cv-1701, 2025 WL 3708947 (W.D. Mich. Dec. 22, 2025); *Cruz Ramos v. Raycraft*, No. 25-cv-1712, 2025 WL 3697296 (W.D. Mich. Dec. 19, 2025); *Gonzalez Labarca v. Raycraft*, No. 25-cv-1636, 2025 WL 3687320 (W.D. Mich. Dec. 19, 2025); *Tellez Fernandez v. Raycraft*, No. 25-cv-1702, 2025 WL 3687333 (W.D. Mich. Dec. 19, 2025); *Torres-Mejia v. Trump*, No. 25-cv-1623, 2025 WL 3684258 (W.D. Mich. Dec. 19, 2025); *Calixto-Navarro v. Martin*, No. 25-cv-1664, 2025 WL 3677467 (W.D. Mich. Dec. 18, 2025); *Leal Guzman v. U.S. Dep't of Homeland Sec.*, No. 25-cv-1531, 2025 WL 3679120 (W.D. Mich. Dec. 18, 2025); *Caal-Col v. Noem*, No. 25-cv-1591, 2025 WL 3649535 (W.D. Mich. Dec. 17, 2025); *Boutta v. Raycraft*, No. 25-cv-1559, 2025 WL 3628232 (W.D. Mich. Dec. 15, 2025); *Olivares Rangel v. Raycraft*, No. 25-cv-1522, 2025 WL 3628225 (W.D. Mich. Dec. 15, 2025); *Mejia v. Noem*, No. 25-cv-1594, 2025 WL 3559137 (W.D. Mich. Dec. 12, 2025); *Singh Multani v. Noem*, No. 25-cv-1513, 2025 WL 3550608 (W.D. Mich. Dec. 11, 2025); *Depaz v. Raycraft*, No. 25-cv-1500, 2025 WL 3534974 (W.D. Mich. Dec. 10, 2025); *Mendoza Siguencia v. Raycraft*, No. 25-cv-1532, 2025 WL 3537550 (W.D. Mich. Dec. 10, 2025); *Rivera Coyote v. Unknown Party*, No. 25-cv-1503, 2025 WL 3534158 (W.D. Mich. Dec. 10, 2025); *Alaniz Perera v. Raycraft*, No. 25-cv-1496, 2025 WL 3496144 (W.D. Mich. Dec. 5, 2025); *Chavez-Perez v. Raycraft*, No. 25-cv-1576, 2025 WL 3480648 (W.D. Mich. Dec. 4, 2025); *Marin Estupinan v. Noem*, No. 25-cv-1580, 2025 WL 3481841 (W.D. Mich. Dec. 4, 2025); *Salcido v. Raycraft*, No. 25-cv-1453, 2025 WL 3481799 (W.D. Mich. Dec. 4, 2025); *Salvatierra Mazariegos v. Raycraft*, No. 25- |

| | |
|---|---|
| | cv-1470, 2025 WL 3481806 (W.D. Mich. Dec. 4, 2025); *Bustamante v. Noem*, No. 25-cv-1538, 2025 WL 3469850 (W.D. Mich. Dec. 3, 2025); *Calzada Espinosa v. Noem*, No. 25-cv-1396, 2025 WL 3455533 (W.D. Mich. Dec. 2, 2025); *Flores Garcia v. Noem*, No. 25-cv-1387, 2025 WL 3458531 (W.D. Mich. Dec. 2, 2025); *Rivero v. Noem*, No. 25-cv-1294, 2025 WL 3438303 (W.D. Mich. Dec. 1, 2025); *Canedo Cardozo v. Noem*, No. 25-cv-1415, 2025 WL 3274381 (W.D. Mich. Nov. 25, 2025); *Castillo Moreno v. Noem*, No. 25-cv-1491, 2025 WL 3280271 (W.D. Mich. Nov. 25, 2025); *Orellano Lopez v. Lynch*, No. 25-cv-1459, 2025 WL 3280262 (W.D. Mich. Nov. 25, 2025); *Soto-Medina v. Lynch*, No. 25-cv-1392, 2025 WL 3267761 (W.D. Mich. Nov. 24, 2025); *Unaucho-Castro v. Unknown Party*, No. 25-cv-1318, 2025 WL 3264436 (W.D. Mich. Nov. 24, 2025); *Curillo v. Noem*, No. 25-cv-1340, 2025 WL 3235737 (W.D. Mich. Nov. 20, 2025); *Orozco-Martinez v. Lynch*, No. 25-cv-1353, 2025 WL 3223786 (W.D. Mich. Nov. 19, 2025); *Martinez Guerra v. Noem*, No. 25-cv-1341, 2025 WL 3204289 (W.D. Mich. Nov. 17, 2025); *Sevilla v. Noem*, No. 25-cv-1325, 2025 WL 3200698 (W.D. Mich. Nov. 17, 2025); *Contreras Alvarez v. Noem*, No. 25-cv-1313, 2025 WL 3151948 (W.D. Mich. Nov. 12, 2025); *Escobar-Ruiz v. Raycraft*, No. 25-cv-1232, 2025 WL 3039255 (W.D. Mich. Oct. 31, 2025); *Marin Garcia v. Noem*, No. 25-cv-1271, 2025 WL 3017200 (W.D. Mich. Oct. 29, 2025); ***Sanchez Alvarez v. Noem**, **No. 25-cv-1090, 2025 WL 2942648 (W.D. Mich. Oct. 17, 2025)** |
| Jarbou, Hala Y. | *Mohamed v. Raycraft*, No. 25-cv-1836, 2026 WL 19384 (W.D. Mich. Jan. 2, 2026); *Hernandez v. Noem*, No. 25-cv-1823, 2025 WL 3769130 (W.D. Mich. Dec. 31, 2025); *Reynoso v. Raycraft*, No. 25-cv-1890, 2025 WL 3769139 (W.D. Mich. Dec. 31, 2025); *Garcia Hernandez v. Raycraft*, No. 25-cv-1759, 2025 WL 3765468 (W.D. Mich. Dec. 30, 2025); *Vanegas v. Raycraft*, No. 25-cv-1778, 2025 WL 3765466 (W.D. Mich. Dec. 30, 2025); *Ruiz-Gonzalez v. Raycraft*, No. 25-cv-1810, 2025 WL 3734583 (W.D. Mich. Dec. 26, 2025); *Singh v. Raycraft*, No. 25-cv-1486, 2025 WL 3713719 (W.D. Mich. Dec. 23, 2025); *Palomino v. Raycraft*, No. 25-cv-1725, 2025 WL 3708946 (W.D. Mich. Dec. 22, 2025); *Duque Tenas v. Raycraft*, No. 25-cv-1711, 2025 WL 3697299 (W.D. Mich. Dec. 19, 2025); *Frias Briceno v. Raycraft*, |

| | No. 25-cv-1630, 2025 WL 3679127 (W.D. Mich. Dec. 18, 2025); *Garcia Medina v. Noem*, No. 25-cv-1526, 2025 WL 3679128 (W.D. Mich. Dec. 18, 2025); *Tipan-Lutuala v. Noem*, No. 25-cv-1675, 2025 WL 3654615 (W.D. Mich. Dec. 17, 2025); *Cuero v. Noem*, No. 25-cv-1600, 2025 WL 3640282 (W.D. Mich. Dec. 16, 2025); *Valencia Magdaleno v. Raycraft*, No. 25-cv-1706, 2025 WL 3637413 (W.D. Mich. Dec. 16, 2025); *Estrada Perez v. Noem*, No. 25-cv-1627, 2025 WL 3628202 (W.D. Mich. Dec. 15, 2025); *Singh v. Noem*, No. 25-cv-1648, 2025 WL 3628287 (W.D. Mich. Dec. 15, 2025); *Antele Cobix v. Raycraft*, No. 25-cv-1669, 2025 WL 3562651 (W.D. Mich. Dec. 12, 2025); *Mendez-Campos v. Lynch*, No. 25-cv-1618, 2025 WL 3562636 (W.D. Mich. Dec. 12, 2025); *Rakhmatov v. Raycraft*, No. 25-cv-1651, 2025 WL 3550798 (W.D. Mich. Dec. 11, 2025); *Morales v. Bondi*, No. 25-cv-1472, 2025 WL 3525488 (W.D. Mich. Dec. 9, 2025); *Enriques Becerra v. Raycraft*, No. 25-cv-1506, 2025 WL 3511095 (W.D. Mich. Dec. 8, 2025); *Gramajo Reyna v. Raycraft*, No. 25-cv-1575, 2025 WL 3513891 (W.D. Mich. Dec. 8, 2025); *Alvarez Osorio v. Raycraft*, No. 25-cv-1525, 2025 WL 3496152 (W.D. Mich. Dec. 5, 2025); *Pie v. Noem*, No. 25-cv-1564, 2025 WL 3496156 (W.D. Mich. Dec. 5, 2025); *Deleon Ortiz v. Raycraft*, No. 25-cv-1467, 2025 WL 3481808 (W.D. Mich. Dec. 4, 2025); *Barcenas Garcia v. Raycraft*, No. 25-cv-1497, 2025 WL 3454293 (W.D. Mich. Dec. 2, 2025); *Palmito Ordonez v. Noem*, No. 25-cv-1501, 2025 WL 3454296 (W.D. Mich. Dec. 2, 2025); *Correa v. Raycraft*, No. 25-cv-1431, 2025 WL 3442708 (W.D. Mich. Dec. 1, 2025); *Hernandez Lopez v. Raycraft*, No. 25-cv-1412, 2025 WL 3290655 (W.D. Mich. Nov. 26, 2025); *Delcid v. Noem*, No. 25-cv-1366, 2025 WL 3251139 (W.D. Mich. Nov. 21, 2025); *Melgar v. Noem*, No. 25-cv-1377, 2025 WL 3240058 (W.D. Mich. Nov. 20, 2025); *Soto Beltran v. Raycraft*, No. 25-cv-1352, 2025 WL 3237429 (W.D. Mich. Nov. 20, 2025); *Hernandez Franco v. Raycraft*, No. 25-cv-1274, 2025 WL 3223780 (W.D. Mich. Nov. 19, 2025); *Pastor v. Raycraft*, No. 25-cv-1301, 2025 WL 3223777 (W.D. Mich. Nov. 19, 2025); *Juarez Mendez v. Raycraft*, No. 25-cv-1323, 2025 WL 3214100 (W.D. Mich. Nov. 18, 2025); *Lara v. Noem*, No. 25-cv-1332, 2025 WL 3170876 (W.D. Mich. Nov. 13, 2025); *Hernandez Garcia v. Raycraft*, No. 25-cv-1281, 2025 WL |

| | |
|---|---|
| | 3122800 (W.D. Mich. Nov. 7, 2025); *Rodriguez Serrano v. Noem*, No. 25-cv-1320, 2025 WL 3122825 (W.D. Mich. Nov. 7, 2025) |
| Jonker, Robert J. | *Ramirez Adame v. Raycraft*, No. 25-cv-1820, 2026 WL 19381 (W.D. Mich. Jan. 3, 2026); *Cid-Barrios v. Raycraft*, No. 25-cv-1898, 2025 WL 3771231 (W.D. Mich. Dec. 31, 2025); *Fernandez Pichardo v. Raycraft*, No. 25-cv-1815, 2025 WL 3771332 (W.D. Mich. Dec. 31, 2025); *Pena v. Raycraft*, No. 25-cv-1922, 2025 WL 3777048 (W.D. Mich. Dec. 31, 2025); *Verano Cabra v. Raycraft*, No. 25-cv-1777, 2025 WL 3777058 (W.D. Mich. Dec. 31, 2025); *Juarez v. Raycraft*, No. 25-cv-1746, 2025 WL 3728286 (W.D. Mich. Dec. 25, 2025); *Dorantes-Martinez v. Raycraft*, No. 25-cv-1691, 2025 WL 3708928 (W.D. Mich. Dec. 22, 2025); *Dominguez Hernandez v. Bondi*, No. 25-cv-1680, 2025 WL 3687353 (W.D. Mich. Dec. 19, 2025); *Lule Espinosa v. Gradiska*, No. 25-cv-1671, 2025 WL 3697302 (W.D. Mich. Dec. 19, 2025); *Singh v. Raycraft*, No. 25-cv-1676, 2025 WL 3684263 (W.D. Mich. Dec. 19, 2025); *Acosta-Mendez v. Dunbar*, No. 25-cv-1653, 2025 WL 3679123 (W.D. Mich. Dec. 18, 2025); *Badjie v. Raycraft*, No. 25-cv-1754, 2025 WL 3679125 (W.D. Mich. Dec. 18, 2025); *Beltran v. Lynch*, No. 25-cv-1689, 2025 WL 3673580 (W.D. Mich. Dec. 18, 2025); *Jimenez v. Noem*, No. 25-cv-1385, 2025 WL 3673565 (W.D. Mich. Dec. 18, 2025); *Atencio-Pirela v. Raycraft*, No. 25-cv-1505, 2025 WL 3652912 (W.D. Mich. Dec. 17, 2025); *Hernandez Claudio v. Noem*, No. 25-cv-1661, 2025 WL 3654617 (W.D. Mich. Dec. 17, 2025); *Carval v. Lynch*, No. 25-cv-1465, 2025 WL 3635781 (W.D. Mich. Dec. 16, 2025); *Chavez Rojas v. Raycraft*, No. 25-cv-1619, 2025 WL 3628268 (W.D. Mich. Dec. 15, 2025); *Corona Cardena v. Raycraft*, No. 25-cv-1709, 2025 WL 3635783 (W.D. Mich. Dec. 15, 2025); *Toaquiza Ante v. Noem*, No. 25-cv-1650, 2025 WL 3628290 (W.D. Mich. Dec. 15, 2025); *Zugaide Jimenez v. Noem*, No. 25-cv-1512, 2025 WL 3628191 (W.D. Mich. Dec. 15, 2025); *Rangel Espinosa v. Noem*, No. 25-cv-1417, 2025 WL 3628254 (W.D. Mich. Dec. 15, 2025); *Acuna Sanchez v. Noem*, No. 25-cv-1442, 2025 WL 3562577 (W.D. Mich. Dec. 12, 2025); *Becerra-Hernandez v. Lynch*, No. 25-cv-1464, 2025 WL 3562572 (W.D. Mich. Dec. 12, 2025); *Perez v. Noem*, No. 25-cv-1488, 2025 WL 3562634 (W.D. Mich. Dec. 12, 2025); *Avila Maltos v. Noem*, No. |

75

| | |
|---|---|
| | 25-cv-1299, 2025 WL 3550605 (W.D. Mich. Dec. 11, 2025); *Leon Gonzalez v. Dunbar*, No. 25-cv-1510, 2025 WL 3534108 (W.D. Mich. Dec. 10, 2025); *Guillen Mendez v. Unknown Party 1*, No. 25-cv-1407, 2025 WL 3522118 (W.D. Mich. Dec. 9, 2025); *Suarez Guerrero v. Noem*, No. 25-cv-1572, 2025 WL 3520407 (W.D. Mich. Dec. 9, 2025); *Hernandez Sarmiento v. Raycraft*, No. 25-cv-1534, 2025 WL 3458555 (W.D. Mich. Dec. 2, 2025); *Rivera-Cruz v. Raycraft*, No. 25-cv-1250, 2025 WL 3458503 (W.D. Mich. Dec. 2, 2025); *Farias v. Noem*, No. 25-cv-1368, 2025 WL 3439807 (W.D. Mich. Dec. 1, 2025); *Huaman-Rodriguez v. Lynch*, No. 25-cv-1330, 2025 WL 3267768 (W.D. Mich. Nov. 24, 2025); *Delgado Delgado v. Noem*, No. 25-cv-1249, 2025 WL 3251144 (W.D. Mich. Nov. 21, 2025) |
| Maloney, Paul L. | *Magdaleno Rojas v. Lynch*, No. 25-cv-1818, 2026 WL 19383 (W.D. Mich. Jan. 2, 2026); *Pascual Lopez v. Raycraft*, No. 25-cv-1832, 2026 WL 19382 (W.D. Mich. Jan. 2, 2026); *Lopez Ortiz v. Raycraft*, No. 25-cv-1757, 2025 WL 3777031 (W.D. Mich. Dec. 31, 2025); *Andarcia Jimenez v. Noem*, No. 25-cv-1556, 2025 WL 3730935 (W.D. Mich. Dec. 26, 2025); *Cuarez v. Raycraft*, No. 25-cv-1498, 2025 WL 3734651 (W.D. Mich. Dec. 26, 2025); *Hernandez-Cordova v. Lynch*, No. 25-cv-1700, 2025 WL 3734649 (W.D. Mich. Dec. 26, 2025); *Mejia-Lorenzo v. Lynch*, No. 25-cv-1698, 2025 WL 3734703 (W.D. Mich. Dec. 26, 2025); *Mendez v. Noem*, No. 25-cv-1841, 2025 WL 3734702 (W.D. Mich. Dec. 26, 2025); *Mendez v. Raycraft*, No. 25-cv-1717, 2025 WL 3734621 (W.D. Mich. Dec. 26, 2025); *Ruiz-Rebollo v. Raycraft*, No. 25-cv-1769, 2025 WL 3734705 (W.D. Mich. Dec. 26, 2025); *Aguilar Fuentes v. Olson*, No. 25-cv-1634, 2025 WL 3649563 (W.D. Mich. Dec. 17, 2025); *Alonso Cruz v. Noem*, No. 25-cv-1590, 2025 WL 3649528 (W.D. Mich. Dec. 17, 2025); *Amezquita-Espinoza v. Noem*, No. 25-cv-1611, 2025 WL 3654624 (W.D. Mich. Dec. 17, 2025); *Mantilla Mora v. Unknown Party*, No. 25-cv-1683, 2025 WL 3653155 (W.D. Mich. Dec. 17, 2025); *Prajapati v. Lynch*, No. 25-cv-1584, 2025 WL 3649539 (W.D. Mich. Dec. 17, 2025); *Sanchez v. Noem*, No. 25-cv-1514, 2025 WL 3649527 (W.D. Mich. Dec. 17, 2025); *Singh v. Raycraft*, No. 25-cv-1743, 2025 WL 3649554 (W.D. Mich. Dec. 17, 2025); *Zhang v. Noem*, No. 25-cv-1655, 2025 WL 3654619 (W.D. Mich. |

| |
|---|
| Dec. 17, 2025); *Gallardo Abelino v. Noem*, No. 25-cv-1562, 2025 WL 3562588 (W.D. Mich. Dec. 12, 2025); *Murzakulov v. Noem*, No. 25-cv-1589, 2025 WL 3562649 (W.D. Mich. Dec. 12, 2025); *Ramirez Ibanez v. Lynch*, No. 25-cv-1493, 2025 WL 3525324 (W.D. Mich. Dec. 9, 2025); *Ponce Bonilla v. Raycraft*, No. 25-cv-1515, 2025 WL 3492778 (W.D. Mich. Dec. 5, 2025); *Rivera v. Raycraft*, No. 25-cv-1454, 2025 WL 3492774 (W.D. Mich. Dec. 5, 2025); *Perlazo v. Lynch*, No. 25-cv-1445, 2025 WL 3484740 (W.D. Mich. Dec. 4, 2025); *Aguilar-Duran v. Unknown Party*, No. 25-cv-1418, 2025 WL 3458572 (W.D. Mich. Dec. 2, 2025); *Hernandez Quintero v. Noem*, No. 25-cv-1394, 2025 WL 3458504 (W.D. Mich. Dec. 2, 2025); *Labrada-Argibay v. Lynch*, No. 25-cv-1448, 2025 WL 3458583 (W.D. Mich. Dec. 2, 2025); *Leon Lopez v. Lynch*, No. 25-cv-1379, 2025 WL 3458508 (W.D. Mich. Dec. 2, 2025); *Lira Pernalete v. Lynch*, No. 25-cv-1391, 2025 WL 3458542 (W.D. Mich. Dec. 2, 2025); *Perez-Jasso v. Lynch*, No. 25-cv-1345, 2025 WL 3458491 (W.D. Mich. Dec. 2, 2025); *Ramirez v. Lynch*, No. 25-cv-1408, 2025 WL 3267771 (W.D. Mich. Nov. 24, 2025); *Rodriguez Quezada v. Noem*, No. 25-cv-1441, 2025 WL 3267784 (W.D. Mich. Nov. 24, 2025); *Castro Sanchez v. Noem*, No. 25-cv-1361, 2025 WL 3237435 (W.D. Mich. Nov. 20, 2025); *Ceballos Ortiz v. Raycraft*, No. 25-cv-1328, 2025 WL 3223771 (W.D. Mich. Nov. 19, 2025); *Martinez v. Unknown Party*, No. 25-cv-1298, 2025 WL 3223774 (W.D. Mich. Nov. 19, 2025); *Nava Ibarra v. Noem*, No. 25-cv-1335, 2025 WL 3223765 (W.D. Mich. Nov. 19, 2025); *Gonzalez v. Noem*, No. 25-cv-1315, 2025 WL 3170879 (W.D. Mich. Nov. 13, 2025); *Hernandez v. Noem*, No. 25-cv-1307, 2025 WL 3170872 (W.D. Mich. Nov. 13, 2025); *Lucero Lucero v. Noem*, No. 25-cv-1295, 2025 WL 3165235 (W.D. Mich. Nov. 12, 2025); *Salgado Mendoza v. Noem*, No. 25-cv-1252, 2025 WL 3077589 (W.D. Mich. Nov. 4, 2025); *De Jesus Ramirez v. Noem*, No. 25-cv-1261, 2025 WL 3039266 (W.D. Mich. Oct. 31, 2025); *Ruiz Mejia v. Noem*, No. 25-cv-1227, 2025 WL 3041827 (W.D. Mich. Oct. 31, 2025); *Rodriguez v. Noem*, No. 25-cv-1196, 2025 WL 3022212 (W.D. Mich. Oct. 29, 2025); *Puerto-Hernandez v. Lynch*, No. 25-cv-1097, 2025 WL 3012033 (W.D. Mich. Oct. 28, 2025); *Rodriguez Carmona v. Noem*, No. 25-cv-1131, 2025 WL 2992222 (W.D. Mich. Oct. 24, 2025) |

| | |
|---|---|
| **N.D. Ohio** | |
| Lioi, Sara | *Chavez v. Director of Detroit Field Office*, No. 25-cv-2061, 2025 WL 3187080 (N.D. Ohio Nov. 14, 2025) |
| Polster, Dan Aaron | *Macias v. Raycraft*, No. 25-cv-2642, 2025 WL 3525262 (N.D. Ohio Dec. 9, 2025) |
| Pearson, Benita Y. | *Lopez v. Raycraft*, No. 25-cv-2449, 2025 WL 3280344 (N.D. Ohio Nov. 25, 2025) |
| **E.D. Tenn.** | |
| Crytzer, Katherine A. | *Patino v. Ladwig*, No. 25-cv-569, 2025 WL 3628450 (E.D. Tenn. Dec. 15, 2025) |
| **M.D. Tenn.** | |
| Richardson, Eli | *Cardona v. Ladwig*, No. 25-cv-01451, 2025 WL 3722009 (M.D. Tenn. Dec. 23, 2025) |
| **W.D. Tenn.** | |
| Lipman, Sheryl H. | *Godinez-Lopez v. Ladwig*, No. 25-cv-02962, 2025 WL 3047889 (W.D. Tenn. Oct. 31, 2025) |
| Parker, Thomas L. | *Moreno-Espinoza v. Ladwig*, No. 25-cv-03093, 2025 WL 3691452 (W.D. Tenn. Dec. 19, 2025); *Urrutia-Diaz v. Ladwig*, No. 25-cv-03098, 2025 WL 3689158 (W.D. Tenn. Dec. 19, 2025); *Cordova v. Ladwig*, No. 25-cv-03037, 2025 WL 3679764 (W.D. Tenn. Dec. 18, 2025); *Pena v. Ladwig*, No. 25-cv-03082, 2025 WL 3679766 (W.D. Tenn. Dec. 18, 2025); *Padilla-Ugsha v. Ladwig*, No. 25-cv-03045, 2025 WL 3638007 (W.D. Tenn. Dec. 15, 2025); *Monge-Nunez v. Ladwig*, No. 25-cv-03043, 2025 WL 3565348 (W.D. Tenn. Dec. 12, 2025) |

**Chart Of District Court Decisions in The Sixth Circuit Holding That § 1225(b)(2) Rather Than 8 U.S.C § 1226 Applies to Non-Citizens Who Entered Without Inspection**

| Judge | Relevant Decisions as of January 3, 2026 (<u>TOTAL: 2</u>) |
|---|---|
| | **S.D. Ohio** |
| Cole, Douglas R. | *Lucero v. Field Off. Dir.*, No. 25-cv-823, 2025 WL 3718730 (S.D. Ohio Dec. 23, 2025); *Coronado v. Sec'y, Dep't of Homeland Sec.*, No. 25-cv-831, 2025 WL 3628229 (S.D. Ohio Dec. 15, 2025) |